927 So.2d 700 (2006)
Jerome MAIORANA and Carol Maiorana
v.
MELANCON METAL BUILDINGS, INC., the Burlington Insurance Company, Southern Ice Equipment Distributors, Inc., and Dana Corporation.
No. 05-CA-933.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 2006.
Amending Order on Grant of Rehearing May 10, 2006.
*701 Kenneth R. Bowen, Denise C. Puente, M. Davis Ready, Susan M. Caruso, Simon, Peragine, Smith & Redfearn, L.L.P., New Orleans, Louisiana, for Plaintiffs/Appellants, Jerome Maiorana and Carol Maiorana.
Kirk L. Landry, Keogh, Cox & Wilson, Ltd., Baton Rouge, Louisiana, for Intervenor/Appellant, Transcontinental Insurance Company.
Wayne R. Maldonado, Stephen M. Gelé, Ungarino & Eckert, LLC, Metairie, Louisiana, for Defendant/Appellee/Appellant, Dana Corporation.
Brian C. Bossier, Tara Nunez Smith, Erin H. Boyd, Blue Williams, L.L.P., Metairie, Louisiana, for Defendant/Appellee, Southern Ice Equipment Distributors, Inc.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
This is personal injury suit, in which several parties appeal a summary judgment that dismissed one of the defendants. We reverse and remand.
Jerome Maiorana, a roofing contractor, was severely injured when he fell through a fiberglass skylight while inspecting the roof of a warehouse building at 5128 Storey Street in Harahan. The skylight had been painted over with a gray coating that made it indistinguishable from the rest of the roof.
The warehouse was leased by Southern Ice Equipment Distributors, Inc. ("Southern Ice") from its sister corporation, Southern Investments, Inc. In 2001, before Southern Ice moved into the building, it hired Dana Corporation ("Dana") to renovate the interior office space and to repair the roof. Dana hired Melancon Metal *702 Buildings, Inc. ("Melancon Metal") to perform the roof repairs. To extend the life of the metal roof, which was rusting, Melancon Metal coated over the roof with a gray rubber-like substance. The roof had numerous fiberglass skylights built into it. While coating the metal roof surface, Melancon Metal coated the edges of the skylights to seal them.
The roof continued to leak, however. Southern Ice repeatedly called Dana to cure the problem. Dana brought Melancon Metal back to correct the leaks. Melancon Metal recoated the roof. Eventually, after determining that two of the skylights over the office area may have been leaking, Danny Chartier of Dana told Gerald Melancon, proprietor of Melancon Metal, to cover the skylights, but did not instruct Mr. Melancon what material to use to cover the skylights. Some time in October 2002, Melancon Metal painted over the two skylights with the same coating used to seal the roof.
Nevertheless, the roof continued to leak, so Dana eventually hired Southern Roofing Company, Inc. ("Southern Roofing") to repair the roof. On April 24, 2003, Jerome Maiorana, owner/operator of Southern Roofing, came to inspect the warehouse roof and to locate the problem areas. While walking on the warehouse roof during his inspection, he stepped onto one of the coated-over skylights and fell through, landing on the floor 20 feet below. He was seriously injured.
Mr. Maiorana and his wife filed suit against Melancon Metal, Melancon Metal's insurer, Southern Ice, and Dana. Transcontinental Insurance Company ("Transcontinental"), workers' compensation insurer of Southern Roofing, intervened to recover benefits paid to Mr. Maiorana.
Southern Ice filed a motion for summary judgment on the basis that strict liability does not apply and that it was not negligent, because it neither knew nor should have known that the skylight had been coated over in a manner that made it indistinguishable from the rest of the roof.
The district court granted summary judgment, dismissing the claims against Southern Ice. The Maioranas, Transcontinental, and Dana have appealed.
The Maioranas assert the trial court erred, first, in acting as factfinder by weighing contradictory evidence presented on genuine issues of triable fact and adjudicating the issue of liability; second, in rendering summary judgment despite genuine issues of material fact as to whether Southern Ice, as custodian of the building, breached its duty to the plaintiff to discover or warn of the unreasonably dangerous condition on the premises that caused the plaintiff to sustain injuries.
Transcontinental has adopted the brief of the plaintiffs, the Maioranas.
Dana asserts the trial court erred by not holding Southern Ice, as a lessor, strictly liable under La.C.C. art. 2695, and by granting summary judgment when there are genuine issues of material fact as to whether Southern Ice knew or should have known of an unreasonably dangerous condition in a building in its custody.

STANDARD OF REVIEW
"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.. . . The procedure is favored and shall be construed to accomplish these ends." La.C.C.P. art. 966(A)(2).
The motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact, and that the mover is *703 entitled to judgment as a matter of law. La.C.C.P. art. 966(B).
The burden of proof is on the moving party. La.C.C.P. art. 966(C)(2). However, if the moving party will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the moving party's burden on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Id. Thereafter, the adverse party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. Id.
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. "An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law." Id.
A "genuine issue" is a "triable issue," that is, an issue on which reasonable persons could disagree. Jones v. Estate of Santiago, 03-1424, p. 6 (La.4/14/04), 870 So.2d 1002, 1006.
In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. "Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact."
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. [Citations omitted.]
Smith, 93-2512 at p. 27, 639 So.2d at 751.

STRICT LIABILITY
La.C.C. art. 2317.1, added by Acts 1996, 1st Ex.Sess., No. 1, § 1 (eff. April 16, 1996), eliminated the distinction between the strict liability and negligence of the owner or custodian of property, by requiring a showing of knowledge or constructive knowledge in order to impose liability. Dupree v. City of New Orleans, 99-3651, p. 5 (La.8/31/00), 765 So.2d 1002, 1007, n. 5.
At the time of the accident, however, La.C.C. art. 2695 provided:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.[1]
*704 Despite the passage of La.C.C. art. 2317.1, La.C.C. art. 2695 retained the concept of strict liability. Montecino v. Bunge Corp., Inc., 04-875, p. 5 (La.App. 5 Cir. 2/15/05), 895 So.2d 603, 606, writ denied, 05-0962 (La.6/17/05), 904 So.2d 704. Article 2317.1 did not impinge upon the lessee's cause of action in strict liability against the lessor under La.C.C. art. 2695. Id.
Dana contends there is no controlling jurisprudence from either this Circuit or the Louisiana Supreme Court that would bind this Court to hold that Article 2695 benefits only lessees and their injuries, and does not benefit invitees of lessees, or lessees when sued by invitees. Dana acknowledges that several of the circuit courts of appeal have limited Article 2695 to the lessor-lessee relationship, but urges us to "adopt a more expansive interpretation of Article 2695 which would include rendering lessors strictly liable when a defect in the thing caused a lessee to suffer the loss of being sued as liable to the lessee's invitee who was injured by the defect." Original Brief of Defendant/Appellant, Dana Corporation, at 8.
Contrary to Dana's assertion, this Court has previously held that Article 2695 applies only within the lessor-lessee relationship:
Yet another theory advanced by plaintiff is that La.Civ.Code, art. 2695, governing the duties of a lessor to provide premises free of defects to his lessee, should be applied here in regard to plaintiff, an invitee of the lessee. This argument has repeatedly been considered, and uniformly rejected on the grounds that application of Article 2695 is restricted to the lessor-lessee relationship and does not apply to third parties. [Citations omitted.]
Han v. Favrot & Shane Properties, 615 So.2d 389, 391-392 (La.App. 5 Cir.1993), writ denied, 617 So.2d 910 (La.1993); see also, Gallagher v. Favrot, 499 So.2d 1205, 1207 (La.App. 5 Cir.1986), writ denied, 503 So.2d 23 (La.1987).
"This article's strict liability is an incident of the parties' contractual relationship. It arises because the contract of lease contains implied warranties that the leased property is not defective and is fit for its intended use." Johnson v. Lull Enterprises, Inc., 92-18, p. 5 (La.App. 3 Cir. 10/11/95), 663 So.2d 403, 407, writ denied, 95-2754 (La.2/9/96), 667 So.2d 529.
Accordingly, we find no merit to Dana's argument that Southern Ice is strictly liable under former La.C.C. art. 2695 for the injuries to Mr. Maiorana, who was a third party outside the lessor-lessee relationship.

NEGLIGENCE
La.C.C. art. 2317.1 provides in pertinent part:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
Pursuant to this article, the appellants assert that Southern Ice, as custodian of the warehouse building, had an affirmative duty to discover, prevent, and warn of the camouflaged skylight that collapsed *705 beneath Mr. Maiorana's feet. They contend Southern Ice breached this duty in failing to exercise due care, with the result that Mr. Maiorana sustained severe and disabling injuries, including paralysis and brain injury, when he fell through the hidden skylight.
The appellants argue there are disputed issues of material fact as to whether Southern Ice knew or should have known that the skylights had been coated over and were a danger.
The depositions of Southern Ice employees establish that the main office of Southern Ice is located in Lafayette and the president/owner of the company, Chris Sadler, lives and works in Lafayette. He visits the Jefferson Parish office several times a year. Four employees worked out of the Storey Street building in Harahan: an inside sales manager, an outside sales manager, a parts manager, and a warehouse manager. None of them was designated as a manager of the Storey Street branch, however. The outside sales manager supervised sales calls and sales-related matters, but he was not responsible for physical maintenance. When there were problems with the building, the employees would notify Sadler and Sadler would make arrangements for repairs.
Thus, after the staff moved into the newly-renovated building in 2002, their repeated complaints about roof leaks were relayed by Sadler to Dana Corporation. Dana and/or its subcontractors went repeatedly to the building to make repairs.
The skylights to which Melancon Metal applied the coating were over the office section of the warehouse. Due to a suspended ceiling in the office, the skylights were not visible from within the office, and the employees testified they did not know there were skylights overhead. They were aware of the skylights over the warehouse portion, however, which did not have a suspended ceiling.
Chris Sadler, the company owner, testified he knew there were skylights, and that he went on the roof once with Danny Chartier of Dana, to inspect it after the initial coating had been applied. However, he examined the edges and gutter areas of the roof, rather than the central portion on which the skylights were located. Sadler and all the staff members claimed they were unaware that two of the skylights had been painted over.
In contrast, Gerald Melancon of Melancon Metal testified he told the Southern Ice employees that he had covered the skylights because that was where the leak was coming from. None of the Southern Ice employees recalled Mr. Melancon telling them he had covered the skylights.
"In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Hines v. Garrett, 04-806, p. 1 (La.6/25/04), 876 So.2d 764, 765. "All doubts should be resolved in the non-moving party's favor." Id.
A trial judge cannot make credibility determinations on a motion for summary judgment. Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, p. 8 (La.2/20/04), 866 So.2d 228, 234. Further, factual inferences reasonably drawn from the conflicting evidence should be construed in favor of the party opposing the motion. Willis v. Medders, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.
We conclude the trial court violated these precepts in granting the motion for summary judgment. To grant it, the court had to choose between the contradictory statements of the Southern Ice employees *706 and Mr. Melancon, which required the court to make inappropriate credibility determinations. Further, the court construed the conflicting evidence against the parties opposing the motion.
For the foregoing reasons, the summary judgment is reversed and the case is remanded for further proceedings. Costs of this appeal are assessed against Southern Ice Equipment Distributors, Inc.

REVERSED AND REMANDED.

ON REHEARING
The rehearing application of intervenor-appellant Transcontinental Insurance Company, is GRANTED for the limited purpose of making the following correction. The opinion rendered in this matter on April 25, 2006 hereby is AMENDED as follows:
On page 5, line 3, "Southern Ice" is replaced by "the Maioranas." The full sentence, as amended, shall state, "Transcontinental has adopted the brief of the plaintiffs, the Maioranas."
NOTES
[1] Subsequent to the filing of this suit, the Legislature passed Acts 2004, No. 821, effective January 1, 2005, which revised Louisiana Civil Code, Book III, Title IX, "Of Lease." Former La.C.C. art. 2695 is a partial source for present La. C.C. arts. 2696 and 2697. All references in this opinion to La. C.C. art. 2695 refer to that article as it existed prior to the 2004 revision.