MARION F. EDWARDS, Judge.
 

 |3In this civil matter, the plaintiff/appellant, Cheryl Jeansonne (“Ms. Jeansonne”), asks this Court to reverse two summary judgments rendered by the trial court that dismissed her action in tort against all defendants. For reasons that follow, we affirm the rulings of the trial court.
 

 In an original and two amending petitions, Ms. Jeansonne alleged that she was seriously injured when she tripped over three heavy gauge wires supporting a utility pole in front of a residence in Metairie. Ms. Jeansonne alleged that the three |4wires or cables were installed into the ground in such a location that they impede a sidewalk area and have created an unmarked “trap” for pedestrians.
 

 Ms. Jeansonne sued the property owners, Herbert and Pamela Bennett. Ms. Jeansonne also named Bell South Telecommunications, Inc. (“Bell South”), Entergy Louisiana, L.L.C. (“Entergy”), and Cox Communications Louisiana, L.L.C. (“Cox”) as defendants, asserting that all three entities used the utility pole to provide service to their customers. The Parish of Jefferson (“Parish”) was made a defendant on an allegation that the Parish was the owner or custodian of the pole.
 

 The parties conducted extensive discovery after which all defendants, with the exception of the Parish, filed motions for summary judgment. On February 22, 2008, the trial court rendered a judgment granting the motions for summary judgment filed by Cox, Bell South, Entergy and the Bennetts, and dismissing all actions against them.
 

 Subsequently, the Parish filed a motion for summary judgment which was also granted, dismissing plaintiffs action against it.
 

 Ms. Jeansonne appealed both judgments. However, because she subsequently dismissed the Bennetts from the action, this appeal does not relate to the judgment as to those parties.
 

 The record before this Court contains portions of the deposition of Ms. Jean-sonne. In that document, Ms. Jeansonne testified that she rented a home on Bell Street for about a year and half before the accident occurred and was completely familiar with the front sidewalk, as well as the pole and the cables supporting it.
 

 Photos attached to the deposition show that the three wires in question are attached in a cutout within the sidewalk and extend up to the pole. The images |5show that both the utility pole and the grounding of the guy wires impede the pedestrian walkway to some extent.
 

 Ms. Jeansonne testified she told Mr. Bennett when she first rented the house that the placement of the pole and the guy wires presented a dangerous situation. However, she acknowledged that neither the pole nor the wires were on the Ben-netts’ property. Ms. Jeansonne also admitted that she did not call the Parish, Entergy, Bell South, or Cox to inform them of her safety concerns.
 

 Although the home had a driveway, it was Ms. Jeansonne’s custom to park in front of the home on a grassy area between the street and the part of the side
 
 *617
 
 walk were the wires are located. She also testified that she often parked on the sidewalk to be certain her car was completely off the street.
 

 On the day of the accident, Ms. Jean-sonne was unloading groceries from her car. She could not be certain if she parked next to the sidewalk or whether she actually parked on the sidewalk. However, she was certain that the driver’s side of the car was facing the street and the passenger side was facing the sidewalk. She got out of the driver’s door and walked around to the passenger side to be sure all the groceries were removed from the back seat. As she closed the car door, she stepped backwards and caught her heel on one of the wires. This caused her to trip and fall backwards, seriously injuring her wrist.
 

 It was established though various documents and affidavits that the pole and the wires are on Parish property, that Bell South owns the pole, and that both Enter-gy and Cox had agreements with Bell South to use the pole. It was also established that three tensioned cables known as “guy wires” are attached to the pole and fastened to the ground by two anchors. Cox, Bell South, and Entergy each owned a wire.
 

 | fiAfter consideration of all of the documents presented by all parties, the trial court rendered summary judgment in favor of all defendants/appellees in two separate judgments. It is clear from the transcript that the basis for the trial court’s decision was that Ms. Jeansonne had lived in the house for about a year and a half, knew about the dangerous situation but parked there instead of using the driveway, and was walking backwards at the time she tripped.
 

 LAW
 

 Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.
 
 [1]
 
 The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim.
 
 [2]
 
 Thereafter, if the adverse party fails to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial, no issue of material fact exists and the moving party is entitled to summary judgment.
 
 [3]
 

 In brief to this Court, Ms. Jeansonne argues that her expert’s affidavit shows that the placement of the pole and guy wires, as well as the condition of the guy wires, is in violation of the National Safety Code. She argues that the utility companies breached a duty of care associated with the placement of public utility facilities pursuant to LSA-R.S. 48:381.3.
 
 [4]
 

 
 *618
 
 |7Further, as to the Parish, Ms. Jean-sonne argues that the pole and guy wires were on Parish-owned property and impede a public walkway. She also argues the Parish had constructive notice of the dangerous condition because the original placement of the poles and the guy wires created a hazard.
 

 On appeal our review of summary judgments is
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 [5]
 
 The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case.
 
 [6]
 

 UTILITY COMPANIES
 

 Ms. Jeansonne cites LSA-R.S. 48:381.3 and acknowledges that, while the statute is not directly applicable because it applies to the “motoring public,” it is illustrative of the duty imposed upon a utility company to comply with the ¡^National Safety Code when placing poles and guy wires. She contends that appellees, Bell South, Enter-gy, and Cox, are liable for failure to comply with the National Safety Code.
 

 Defendant/appellee utility companies urge this Court to analyze this action pursuant to LSA-C.C. art. 2317.1.
 
 [7]
 
 They ar
 
 *619
 
 gue that a violation of the National Safety Code, even if it is proven, does not render the placement of the guy wires an unreasonably dangerous condition. Further, the utility companies argue that appellant had a duty to see what was obvious and well known to her.
 

 To impose liability for an unreasonably dangerous defect, a plaintiff has the burden to show that the thing was in the custodian’s custody or control, it had a vice or defect that presented an unreasonable risk of harm, the defendant knew or should have known of the unreasonable risk of harm, and that the damage was caused by the defect.
 
 [8]
 
 With the addition of the requirement to show actual or constructive knowledge in order to impose liability under LSA-C.C. art. 2317.1, the Legislature has effectively turned strict liability into negligence claims.
 
 [9]
 
 Thus, negligence requires the risk be both foreseeable and unreasonable.
 
 [10]
 

 Under either a theory of strict liability or negligence, it is necessary to prove that the condition of the guy wires were defective or presented an unreasonable risk of harm, and that this is the cause-in-fact of plaintiffs injuries. Not every defect gives rise to liability.
 
 [11]
 
 The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a 1 jiprudent person using ordinary care under the circumstances.
 
 [12]
 
 The single fact that a pedestrian falls does not automatically elevate the condition of a sidewalk to that of an unreasonably dangerous defect.
 
 [13]
 
 Several factors may be considered in determining whether a hazard presents an unreasonable risk of harm. The degree to which the danger is evident to the plaintiff is one factor in determining whether the condition is unreasonably dangerous.
 
 [14]
 

 Generally a defendant has no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff.
 
 [15]
 
 Specifically, in a trip and fall case, the duty is not solely with the landowner. A pedestrian has a duty to see that which should be seen and is bound to observe whether the pathway is clear.
 
 [16]
 
 The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care or which was as obvious to a visitor as it was to the landowner.
 
 [17]
 

 
 *620
 
 In addition to proving that the defect created an unreasonably dangerous condition, a plaintiff must also show the defect was a cause-in-fact of her injury.
 
 [18]
 
 Generally, the initial determination in the duty-risk analysis is cause-in-fact. Cause-in-fact usually is a “but for” inquiry that tests whether the accident would or would not have happened but for the defendant’s substandard conduct.
 
 [19]
 
 When | inthere are concurrent causes of an accident, which nevertheless would have occurred in the absence of one of the causes, the proper inquiry regarding cause-in-fact is whether the conduct under consideration was a substantial factor in bringing about the accident.
 
 [20]
 

 We acknowledge that whether a defect presents an unreasonable risk of harm “is a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts.”
 
 [21]
 
 Further, causation is a question of fact. Nevertheless, to overrule a grant of summary judgment we must find a
 
 material fact
 
 still at issue.
 
 [22]
 
 A material fact is one whose existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery.
 
 [23]
 

 Upon a
 
 de novo
 
 review of the facts presented and the applicable law, we find no error in the trial court’s grant of summary judgment in favor of the utility companies. Ms. Jeansonne knew that the guy wires were impeding the sidewalk, she parked next to them rather than use her driveway, and she was walking backwards at the time of the accident. Additionally, she admits she never expressed concern about the placement of, and lack of marking on, the guy wires to any defendants/ap-pellees, other than the Bennetts. We find that Ms. Jeansonne, as the party with the burden of proof at trial, has failed to produce factual support sufficient to show that she will be able to meet her evidentiary burden of proof at trial as required by law; therefore, summary judgment was appropriate.
 
 [24]
 

 After an analysis of the applicable law, we cannot find a material fact remaining to be decided that would preclude a grant of summary judgment on the issues of whether the placement of the guy wires posed an unreasonable risk of |uharm, or whether the placement of the wires was a cause-in-fact of Ms. Jeansonne’s fall. Further, she presented nothing to show that any of the utility companies had notice of the condition. Accordingly, we affirm the grant of summary judgment as to Bell South, Cox, and Entergy.
 

 JEFFERSON PARISH
 

 To prevail on a claim against a public entity under LSA-C.C. art. 2317.1, a plaintiff must establish: (1) the entity’s custody or ownership of the defective thing; (2) the defect created an unreasonable risk of harm; (3) the entity’s actual or constructive notice of the defect; and (4) causation.
 
 [25]
 

 Ms. Jeansonne admits she did not notify the Parish about the condition. However,
 
 *621
 
 she argues the Parish had constructive notice because it is obvious that the guy wires and the pole impede the sidewalk. We find that is insufficient to constitute notice to the Parish under the law.
 

 Constructive notice as it relates to actions against a public entity is defined as the existence of facts which infer actual knowledge.
 
 [26]
 
 Constructive notice can be found if the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury.
 
 [27]
 
 There has been no showing by Ms. Jeansonne that would meet this standard.
 

 Accordingly, we affirm the grant of summary judgment in favor of Jefferson Parish.
 

 AFFIRMED.
 

 [1]
 

 . LSA-C.C.P. art. 966(B).
 

 [2]
 

 . LSA-C.C.P. art. 966(C)(2).
 

 [3]
 

 .
 
 Id.
 

 [4]
 

 . The duty of care owed to the motoring public by the owners and/or operators of public utility facilities, located adjacent to a highway, road, street, or bridge in this state shall be satisfied when:
 

 (1) With respect to state highways, the public utility facilities comply with the provisions of the applicable edition of the National Electrical Safety Code for structure placement relative to roadways and with the applicable edition of the Department of Transportation and Development Standards Manual for Accommodating Utilities, Driveways and Other Facilities on Highway Right-of-Way, Section 4B1. The provisions of this Paragraph shall not alter any conditions and standards of any
 
 *618
 
 permit issued by the Department of Transportation and Development for the use and occupancy of the right-of-way of any state highway.
 

 (2) With respect to roads, streets, and bridges not part of the state highway system, the public utility facilities located in public right-of-way comply with the provisions of the applicable edition of the National Electrical Safety Code for structure placement relative to roadways, and to the extent they exist, with applicable ordinances of the parish or municipality that specify the location for public utility facilities in public right-of-way.
 

 (3) With respect to roads, streets, and bridges not part of the state highway system, the public utility facilities located on private property comply with provisions of the applicable edition of the National Electrical Safety Code for structure placement relative to roadways.
 

 (4) With respect to structures, appurtenances, equipment, or appliances whose placement or installation is not subject to the provisions of the National Electric Safety Code, the public utility facilities comply with the provisions of the applicable national standards, the applicable edition of the Department of Transportation and Development standards, or local standards in effect at the time such structure, appurtenance, equipment, or appliance is placed, installed, or located adjacent to any highway, road, street, or bridge in this state, whether or not a part of the state highway system.
 

 B.(l) The owner of a road, street, highway, or bridge, which is not itself the owner or operator of a public utility, shall owe no duty to the motoring public regarding or relating to the placement or location of any public utility facilities within or appurtenant to the right-of-way of such road, street, highway, or bridge.
 

 (2) No private property owner, which is not itself the owner or operator of a public utility, shall owe a duty to the motoring public regarding or relating to the placement or location of any public utility facilities on or appurtenant to this property.
 

 C. For the purpose of this Section "public utility facilities” means pipes, mains, conduits, cables, wires, towers, poles, and other structures, equipment or appliances, whether publicly or privately owned, installed, or placed adjacent to any roadway by an owner or operator of a public utility facility.
 

 [5]
 

 .
 
 Pizani v. Progressive Ins. Co.,
 
 98-225 (La.App. 5 Cir. 9/16/98), 719 So.2d 1086.
 

 [6]
 

 .
 
 Muller v. Carrier Corp.,
 
 07-770 (La.App. 5 Cir. 4/15/08), 984 So.2d 883.
 

 [7]
 

 . The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
 

 [8]
 

 . LSA-C.C. art. 2317.1.
 

 [9]
 

 .
 
 Maiorana v. Melancon Metal Bldgs., Inc.,
 
 05-933 (La.App. 5 Cir. 4/25/06), 927 So.2d 700.
 

 [10]
 

 .
 
 Moory v. Allstate Ins. Co.,
 
 2004-0319 (La.App. 1 Cir. 2/11/05), 906 So.2d 474,
 
 writ denied,
 
 05-0668 (La.4/29/05), 901 So.2d 1076.
 

 [11]
 

 .
 
 Monson v. Travelers Property & Cas. Ins. Co.,
 
 06-921 (La.App. 5 Cir. 4/24/07), 955 So.2d 758.
 

 [12]
 

 .
 
 Id.
 

 [13]
 

 .
 
 Moore v. Oak Meadows Apartments,
 
 43,620 (La.App. 2 Cir. 10/22/08), 997 So.2d 594.
 

 [14]
 

 .
 
 Id.
 

 [15]
 

 .
 
 Pitre v. La. Tech Univ.,
 
 95-1466, 95-1487 (La.5/10/96), 673 So.2d 585, 591.
 

 [16]
 

 .
 
 Hutchinson v. Knights of Columbus, Council No.
 
 5747, 2003-1533 (La.2/20/04), 866 So.2d 228, 235.
 

 [17]
 

 .
 
 Id.
 

 [18]
 

 . LSA-C.C. art. 2317.1.
 

 [19]
 

 .
 
 McCain v. Howell,
 
 2006-1830 (La.App. 1 Cir. 9/14/07), 971 So.2d 323,
 
 writ denied,
 
 2007-2027 (La. 12/14/07), 970 So.2d 533.
 

 [20]
 

 .
 
 Id.
 

 [21]
 

 .
 
 Tillman v. Johnson,
 
 612 So.2d 70 (La.1993)
 
 (per
 
 curiam).
 

 [22]
 

 . LSA-C.C.P. art. 966.
 

 [23]
 

 .
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512 (La.7/5/94), 639 So.2d 730, 751.
 

 [24]
 

 . LSA-C.C.P. art. 966(C)(2).
 

 [25]
 

 .
 
 Butkiewicz v. Evans,
 
 06-236 (La.App. 5 Cir. 9/26/06), 943 So.2d 509, 513.
 

 [26]
 

 . LSA-R.S. 9:2800(C).
 

 [27]
 

 .
 
 Maldonado v. La. Superdome Com’n,
 
 95-2490 (La.App. 4 Cir. 1/22/97), 687 So.2d 1087.