Cite as 2024 Ark. App. 573

# ARKANSAS COURT OF APPEALS

DIVISIONS I, III & IV
No. CV-23-100

|  |  |
|---|---|
|  | Opinion Delivered November 20, 2024 |
| PHILLIP CARTER AND ANTOINETTE CARTER-HARRIS, AS LEGAL GUARDIANS OF ANTOIN HARRIS, AN INCAPACITATED PERSON<br>APPELLANTS | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CV-18-683]<br><br>HONORABLE ROBERT H. WYATT, JR., JUDGE |
| V. |  |
| ENTERGY ARKANSAS, INC.<br>APPELLEE | REVERSED AND REMANDED |

**BART F. VIRDEN, Judge**

Phillip Carter and Antoinette Carter-Harris, as legal guardians of Antoin Harris, appeal the circuit court's order granting summary judgment to Entergy Arkansas, Inc., in their negligence suit against the utility company. We reverse and remand.

I. *Background*

Entergy Arkansas, Inc. ("Entergy"), owns a utility pole with attached supporting guy wires that is located on the premises of Pine Bluff High School. This equipment is in a grassy strip between a campus parking lot and a campus street.[1] On December 9, 2015, Antoin

---

[1]There was a disagreement whether the grassy strip of land was subject to a utility easement as discussed below. In light of our holding, whether the grassy strip was subject to an easement is not relevant.

Harris ("Antoin") and other students were in the relevant parking area performing ROTC drills after school. Upon dismissal from drill with instruction to go to the ROTC building, Antoin and a classmate ran from the parking area toward the ROTC building located on the other side of the grassy strip and campus street. While running across the grassy strip, Antoin struck the guy wire with his body. As a result of the force of impact, Antoin fell backwards and hit his head on the ground. This incident resulted in hospitalization and physical injury including brain damage. Antoin's parents, Phillip Carter and Antoinette Carter-Harris ("the Carter/Harris family"), were granted legal guardianship of him after this incident.

On June 18, 2018, the Carter/Harris family sued Entergy, alleging negligence in Entergy's failure to ensure the guy wire had the industry-required conspicuous marker, failure to exercise ordinary care in maintaining the premises in safe condition, and other allegations. After exchanging pleadings and undergoing unsuccessful mediation, on August 19, 2022, Entergy moved for summary judgment. The motion stated that Antoin was a licensee on Entergy's utility easement; that no duty of care was breached; that regardless of Antoin's status, there was no duty to warn of obvious dangers; and that Antoin knew the guy wire was there and had years of experience safely navigating it. The Carter/Harris family responded on September 9, 2022, claiming that Entergy owed a duty of care on the basis of the city ordinance allowing for placement of utility equipment on city property; that Entergy did not have an easement; that Antoin was an invitee of the school; that the duty of care was breached because of the guard marker placement was not in compliance with the National Electrical Safety Code ("NESC") guidelines; and that factual questions still existed as to

2

whether Antoin's prior knowledge about the guy wire was sufficient to establish the "open and obvious" exception to requiring warning about dangerous circumstances.

A hearing on the motion for summary judgment was held October 18, 2022. The following day, the circuit court entered its order granting Entergy's motion for summary judgment. It found that Entergy had an easement; that Antoin was a licensee and was only owed a duty to not be injured by willful and wanton conduct; that willful and wanton conduct was not pled; that the guy wire was an open hazard known by Antoin; that he successfully navigated the area around the wire for four years; and that because Antoin testified that he was aware of the guy wire and that he could collide with it if he was not paying attention, it was an open and obvious hazard under Arkansas law. As a result, the court found that no material issues of fact existed, granted Entergy's motion for summary judgment, and dismissed the case with prejudice.

The Carter/Harris family appeal.

## II. *Standard of Review*

It is well settled that summary judgment should be granted only when it is clear there are no issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Farm Bureau Mut. Ins. Co. of Ark., Inc. v. Hopkins*, 2018 Ark. App. 174, 545 S.W.3d 257. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appeal, viewing the evidence in the light most favorable to the nonmoving party and resolving all doubts and inferences against the moving party, we

determine if summary judgment was appropriate by deciding whether the moving party's evidence in support of its motion leaves a material fact unanswered. *Holman v. Flores*, 2018 Ark. App. 298, 551 S.W.3d 1. Our appellate review is not limited to the pleadings—we also focus on affidavits and other documents filed by the parties. *Id.*

The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). Summary judgment is not proper, however, where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Williams v. Ark. Dep't of Corr.*, 362 Ark. 134, 207 S.W.3d 519 (2005). The object of summary-judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. *Dodson v. Allstate Ins. Co.*, 365 Ark. 458, 463, 231 S.W.3d 711, 715 (2006).

Under Arkansas law, to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries. *Bennett v. Graves & Assocs., Inc.*, 2019 Ark. App. 99, 571 S.W.3d 528. Because the question of what duty is owed is one of law, we review it de novo. *Id.*

### III. *Discussion*

In cases where tort liability is asserted, we acknowledge the general duty that all people must exercise ordinary care for their own safety and that of others, unless a statute or rule of

law provides otherwise. *See* W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 53 (5th ed. 1984). Arkansas has a jury instruction that sets out the common-law duty: ordinary care is the care a reasonably careful person would use under circumstances similar to those shown by the evidence. AMI Civ. 303 (2023); *Mangrum v. Pigue*, 359 Ark. 373, 198 S.W.3d 496 (2004). That duty holds unless some exception to the general rule applies. One exception asks whether the injured person was an invitee, trespasser, or a licensee. *See Noel v. Cox*, 2019 Ark. App. 70, at 4, 570 S.W.3d 510, 513. What duty one party owes to another is a question of law, not fact. *Lloyd v. Pier W. Prop. Owners Ass'n*, 2015 Ark. App. 487, at 4, 470 S.W.3d 293, 297. Furthermore, the common-law duty and its analysis may be altered or negated by duties subsequently created or imposed by statute or contract. *Id.* Such is the case here.

A. 1965 Ordinance

The circuit court acknowledged that the placement of the pole, lines, and related equipment were allowed because of Ordinance 3959, which the city of Pine Bluff enacted in 1965 for the benefit of Entergy's predecessor. But the circuit court then ruled that Antoin was a licensee on Entergy's easement and was therefore only owed a duty not to be injured by willful or wanton conduct. That decision was a mistake because the ordinance that allowed Entergy to keep its equipment on city-owned land also imposed a duty of care:

> Section 3: . . . All of Grantee's facilities[2] shall be constructed, operated and maintained in accordance with *standards at least equivalent to the standards prescribed by the* [NESC]. . . .

[2]"Facilities" had previously been defined in Section 1 of the same ordinance as "poles, wires, anchors, stubs, transformers, substations, cables, conduits and other

. . . .

> Section 7:  In the construction, operation, and maintenance of its facilities, said Grantee shall use *reasonable and proper precaution* to avoid damage or injury to persons or property and shall hold and save harmless the said Grantor from damage, injury, loss or expense caused by the negligence of the Grantee . . . in constructing, operating, and maintaining said facilities. . . .

Pine Bluff, Ark., Ordinance 3959 (Dec. 30, 1965)[3] (emphasis added).  These are not merely workplace or work zone safety rules, as Entergy argues.  This is a level of care set by ordinance, which renders irrelevant the common-law status of Antoin as licensee or invitee, and whether or not Entergy has an easement.  This case is removed from the realm of common law because the ordinance spells out Entergy's responsibilities in exchange for its use of public land.  The language in Section 12 of the ordinance also makes it a contract:

> Section 12:  Upon written acceptance by Grantee, this Ordinance shall constitute a contract between Grantor and Grantee, and its successors and assigns.

*Id.* § 12.

What then, are the code standards required by the ordinance? The 1987 version of the NESC states that the ground end of anchor guys that are exposed to pedestrian traffic shall be provided with a substantial and conspicuous marker, with a note that visibility of markers can be improved by the use of color or color patterns which provide contrast with

---

related facilities, appliances, and apparatus which are necessary for, or useful in, the furnishing, sale, transmission or distribution of said electrical service."

[3]https://library.municode.com/ar/pine_bluff/munidocs/munidocs?nodeId=466cc0 8fb9a5e, archived at  https://perma.cc/4WRC-X7JY.

6

the surroundings. The 2012 edition of the NESC contains identical wording. There is no dispute that the substantial and conspicuous marker was not located at the "ground end" of the guy wire with which Antoin collided; the marker was upwards of nine to ten feet above ground.



Thus, Entergy failed to follow its unambiguous responsibilities as set forth in the ordinance and prescribed by the NESC standards, which it agreed to in the ordinance by placing the guy wire at that location.

In *Arkansas Power & Light Co. v. Cates*, 180 Ark. 1003, 24 S.W.2d 846, 849 (1930), the city of Waldo enacted an ordinance allowing Arkansas Power & Light Company

("AP&L") to set up electrical wires in the city, similar to the 1965 Pine Bluff ordinance. As part of the Waldo ordinance, AP&L was required to insulate electrical wires, among other prescribed safety measures. The Waldo ordinance contains a provision that says, "This ordinance, upon its acceptance . . . shall constitute a contract between [AP&L] and the incorporated town of Waldo, Arkansas. . . ." *Ark. Power & Light Co.*, 180 Ark. at 1005, 24 S.W.2d at 846–47. (The Pine Bluff ordinance contains similar wording, as indicated above.) AP&L did not insulate the wires, claiming later it was cost prohibitive, among other reasons, and as a result, a citizen (Cates) died from electrocution. A jury found for Cates, and AP&L appealed. Our supreme court affirmed, finding:

> "It is manifest that, in passing the ordinance prescribing the height of the wires of the telephone company and of the street railway company, and their relative distance from each other when it was necessary for their wires to cross each other, the council recognized the danger to the public when these wires came in contact, and had in view the protection of persons who had a right to travel upon the streets. The passage of the ordinance was a municipal regulation, authorized by the laws of the state, and has the force of a statute within the limits of the city. *It was the duty of the defendant companies to comply with the ordinance, and a failure to do so is prima facie evidence of negligence on their part.*"
>
> . . . .
>
> The authorities are practically unanimous in holding that a failure to comply with a statute or ordinance is prima facie evidence of negligence. The facts in this case are that the ordinance was passed imposing the duty to insulate the wires. This duty was not performed, and, by reason of the failure to comply with the ordinance, Cates was killed when he was at a place where he had a right to be, and he had the right to assume that the appellant had complied with the ordinance.

*Id.* at 1011, 1013, 24 S.W.2d at 849 (emphasis added) (citations omitted).

8

The U.S. Court of Appeals for the Eighth Circuit has also summarized this point well:

> Under Arkansas statutory and common law, electric utilities have a "duty to act with reasonable care in the delivery of services." *See* Ark. Code Ann. § 23-3-113 (2008); *Bellanca v. Ark. Power & Light Co.*, 316 Ark. 80, 870 S.W.2d 735, 736 (1994). In *Woodruff Electric Corp. v. Daniel*, 251 Ark. 468, 472 S.W.2d 919, 922 (1975), the Arkansas Supreme Court affirmed its longstanding rule that "the very nature of the business of an electric company requires it to use a high degree of care in the erection, maintenance, operation, and inspection of its equipment ... so as to prevent injury to one likely to come in contact with the power line." An electric utility falls short of its duty of ordinary and reasonable care when it fails "to anticipate and guard against events which may reasonably be expected to happen." *Ark. Power & Light v. Lum*, 222 Ark. 678, 262 S.W.2d 920, 924 (1953). It is not negligent, however, to "fail[ ] to anticipate events occurring only under unusual circumstances," *id.*, or those that "can not be reasonably foreseen." *Clark v. Transcont'l Ins. Co.*, 359 Ark. 340, 197 S.W.3d 449, 454 (2004).
>
> Arkansas courts have repeatedly enforced this duty of ordinary and reasonable care. For example, in *Stacks v. Arkansas Power & Light Co.*, 299 Ark. 136, 771 S.W.2d 754 (1989), the Arkansas Supreme Court found that the electric utility owed a duty to a man who had been electrocuted by a sagging power line while he was fishing in a city owned pond. The accident was foreseeable to the utility because the mayor had earlier asked it to deenergize the line and affidavits in the record indicated that public recreational use of the pond was well known. *Id.* at 755. In the course of its holding, the court cited to numerous Arkansas cases establishing a utility's duty "to inspect and maintain its power lines in proper and safe working order." *Id.* (citing *Ark. Power & Light Co. v. Johnson*, 260 Ark. 237, 538 S.W.2d 541 (1976); *Ark. Gen. Utils. Co. v. Shipman*, 188 Ark. 580, 67 S.W.2d 178 (1934); *Ark. Power & Light Co. v. Cates*, 180 Ark. 1003, 24 S.W.2d 846, 851 (1930) ("The obligation of repairing defects does not mean merely that the company is required to remedy such defective conditions as are brought to its actual knowledge, [but also] . . . to use active diligence to discover defects in its system.") (internal quotation marks omitted)). In *Bellanca v. Arkansas Power & Light Co.*, 316 Ark. 80, 870 S.W.2d 735 (1994), the Arkansas Supreme Court reversed the trial court's holding that no duty existed, noting that a "duty to act reasonably when supplying power" was well established in its own decisions and in the state code. *Id.* at 736.

*Koch v. Sw. Elec. Power Co.*, 544 F.3d 906, 908–09 (8th Cir. 2008).

Likewise, recent cases have held that a party's failure to comply with a statute or ordinance is prima facie evidence of negligence. *Waddell v. Ferguson Home Builders, LLC*, 2017 Ark. App. 66, at 7, 513 S.W.3d 271, 276; *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, 400 S.W.3d 701; *Bolstad v. Pergeson*, 305 Ark. 163, 806 S.W.2d 377 (1991).

It is generally the rule that no duty to warn exists if the condition of the premises that creates the danger was known by, or obvious to, the visiting party; however, there is an exception when the premises operator should reasonably anticipate that the visiting party would be exposed to the danger despite his knowledge of it or its obvious nature. *Van DeVeer v. RTJ, Inc.*, 81 Ark. App. 379, 384, 101 S.W.3d 881, 884 (2003). Statutes, ordinances, or agreements can create obligations and duties that may impose duties additional to those required by common law, as illustrated by the Second Restatement of Torts:

> A statute may require the possessor of land to keep it, or anything upon it, in a condition safe for invitees, or even for licensees, or to take particular precautions for the safety of such visitors. If so, the fact that the visitor knows that the possessor has not complied with the requirements of the statute does not prevent the possessor from being subject to liability for his breach of his statutory duty. Such knowledge of the violation is material only in determining whether the visitor is to be charged with contributory negligence, or assumption of risk, in coming in contact with the dangerous condition.

Restatement (Second) of Torts § 343A cmt. d (Am. L. Inst. 1965). In addition to the requirement of using "reasonable and proper precaution to avoid damage or injury to persons or property," Entergy was also required under Ordinance 3959 to construct, operate,

10

and maintain its facilities in accordance with "standards at least equivalent to the standards prescribed by the National Electrical Safety Code." Pine Bluff, Ark., Ordinance 3959 § 3. Entergy provides us with no provision of the NESC that makes it inapplicable to "open and obvious" or "known" dangers. Further, Entergy has directed us to no authority that would relieve it of the required duty of care—even for known or obvious dangers—in the presence of a governing ordinance, contract, ordinance violation, or prima facie evidence of its own negligence due to its failure to follow NESC guidelines. It was therefore erroneous for the circuit court to apply the "open and obvious" or "known danger" rule to this case in finding that no factual questions existed and granting summary judgment to Entergy.

The Carter/Harris family's primary argument below and on appeal is that Ordinance 3959 set forth the duty of care that Entergy owed to Antoin and that Entergy breached that duty. We find this argument persuasive as to the duty of care. The breach thereof and resulting damages are questions for the fact-finder. The circuit court committed an error of law in its disregard of Ordinance 3959, which prescribed the duty of care owed to Antoin in this matter, and its reliance on common-law duties and standards in reaching its decision to grant summary judgment to Entergy. Further, considering the prima facie evidence of Entergy's negligence in light of the controlling ordinance, there remain sufficient questions of fact such that summary judgment is not proper in this matter. Therefore, this case is reversed and remanded for further proceedings.

B. Posttrial Motions

11

We do not address any of Entergy's challenges to the posttrial motion filed by the Carter/Harris family to request clarification or additional fact-finding. In accomplishing its review of a summary-judgment motion, the circuit court is not required to make findings of fact and conclusions of law, pursuant to Rule 52(a) of the Arkansas Rules of Civil Procedure. *Hardin v. Bishop*, 2013 Ark. 395, at 5, 430 S.W.3d 49, 53. Rule 52(a) plainly states that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under these rules." Ark. R. Civ. P. 52(a) (2015). *See also Hardin*, *supra* (holding that merely raising the arguments in the motion for summary judgment is sufficient to preserve the issues on appeal).

Reversed and remanded.

HARRISON, C.J., and BARRETT, THYER, HIXSON, and MURPHY, JJ., agree.

GLADWIN, KLAPPENBACH, and BROWN, JJ., dissent.

**ROBERT J. GLADWIN, Judge, dissenting**. Today, the majority reverses and remands the circuit court's order granting summary judgment to Entergy Arkansas, Inc., holding that questions of fact remain with respect to Entergy's duty of care, the breach thereof, and the resulting damages. Because of the open and notorious nature of the guy-wire hazard and Antoin's specific knowledge and experience under the particular circumstances of the present case, I must respectfully dissent.

"[A] dangerous condition is 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" *Noel v. Cox*, 2019 Ark. App. 70,

at 7, 570 S.W.3d 510, 515 (quoting *Van DeVeer v. RTJ, Inc.*, 81 Ark. App. 379, 386, 101 S.W.3d 881, 885 (2003) (holding that the duty to warn was satisfied if the appellant knew or should have known of the dangerous condition due it being open and obvious)). Basically, the standard requires the court to view the condition in the context Antoin found himself in when he encountered this guy wire on this particular occasion.

We recently noted that in Arkansas, the only recognized exception to the open-and-obvious-danger rule is when a business invitee is forced, as a practical matter, to encounter a known or obvious risk in order to perform his job. *Rodriguez v. Chakka*, 2024 Ark. App. 224, at 9, 687 S.W.3d 592, 598. Moreover, that limited exception has been applied when the invitee is forced, as a practical matter, to encounter that danger in order to perform his or her job. Antoin was neither working at the time he ran into the guy wire nor forced to encounter the guy wire for any reason, job related or not. To the contrary, the undisputed evidence establishes that he was free to cross the street at the intersection or to go around or under the guy wire and that he had done so numerous times in the past. Given that Antoin had safely maneuvered around the guy wire for four years along with the lack of evidence of any other incidents regarding this guy wire, there is no evidence to support an argument that Entergy should have reasonably anticipated Antoin would be exposed to the hazard of running into the guy wire despite his knowledge of it.

Antoin clearly explained his awareness of the guy wire and the danger it posed in his deposition testimony, testifying that he both knew of its existence and to be careful not to run into the guy wire. Antoin's testimony underscores that this is not a situation in which

he had passed by the guy wire on one or two occasions; rather, he traversed the exact area multiple times a week over four years. No doubt varying weather conditions and changes in sun levels at specific times throughout the school year had occurred during those four years. Nothing in his testimony presents a question as to whether his longstanding knowledge and awareness of the guy wire might have been compromised on the day the incident occurred.

The circuit court found that even if Entergy owed Antoin a duty of reasonable care to protect him from the hazard created by the placement of the guard on the guy wire, it was relieved of that duty by the fact that the guy wire itself was an open and obvious hazard of which Antoin was well aware because of his past encounters with it.

A de novo review of the record shows that the undisputed evidence established that Antoin was intricately familiar with the guy wire's location and had years of experience safely navigating it to get to and from the parking lot next to his high school. For all four years of high school, Antoin had participated in ROTC drills in the parking lot next to the guy wire multiple times a week. Sometimes he went under the guy wire, mindful to not hit his head, and sometimes he took a route to go around it. He "knew they were there," and he "either ducked around them or underneath them or walked around them." The Carter/Harris family's attempt to minimize Antoin's knowledge of and familiarity with the guy wire by claiming he merely "noticed the guy wire before" is clearly contrary to the evidence—most importantly, his own testimony.

Accordingly, regardless of whether Entergy owed a general duty of ordinary care or the limited duty owed to a licensee on its utility easement, there is no duty to eliminate or

warn of a hazard of which a plaintiff is already aware. This court specifically analyzed this issue in *Ken's Discount Building Materials v. Meeks*, 95 Ark. App. 37, 233 S.W.3d 176 (2006), which is especially instructive given the similarity in the facts of that case and this appeal. In *Meeks*, the minor plaintiff was riding his bicycle on a sidewalk when he struck the horizontal crossbar of a sign in front of defendant property owner's business. *Id.* The minor plaintiff alleged the defendant was negligent in maintaining a dangerous condition on his property and in failing to warn the public of the danger of the crossbar. *See id.*

The business in question was located across the street from a football stadium and a boys and girls club. *Id.* at 38, 233 S.W.3d at 177. The defendant testified that it was not uncommon for him to see children riding bikes on the sidewalk in front of his store and that he could have put reflective tape across the crossbar to make it more visible. *Id.* While the minor plaintiff denied having noticed the crossbar specifically, he admitted that he was already aware of the sign from previous rides past the store. *Id.* at 38–39, 233 S.W.3d at 178. In reversing the circuit court's verdict in favor of the minor plaintiff, we noted that the defendant had breached no duty owed to the plaintiff and that there was simply "no duty to warn of obvious or patent dangers" like the crossbar. *Id.* at 40–41, 233 S.W.3d at 179.

As Entergy noted below and in its brief before us, other jurisdictions have specifically held that a guy wire is a known or obvious hazard in similar circumstances. Despite the Carter/Harris family's assertion to the contrary, the evidence in this case is materially indistinguishable from the facts in *Jeansonne v. South Central Bell Telephone Co.*, 8 So.3d 613

(La. App. 2009), and *Del Bianco v. Boston Edison Co.*, 156 N.E.2d 683 (Mass. 1959), in which the courts held that the guy wire was a known or obvious hazard to the plaintiffs.

In *Jeansonne*, *supra*, the plaintiff tripped over guy wires supporting a utility pole in front of a residence. The plaintiff alleged the guy wires were "an unmarked trap for pedestrians." *Jeansonne*, 80 So.3d at 616. The plaintiff testified she had lived nearby for over a year before the accident and was familiar with the sidewalk, the utility pole, and the guy wires supporting it. *Id.* On the day of the accident, the plaintiff parked near the utility pole and began unloading groceries from her car. *Id.* at 617. She caught her heel on one of the guy wires, causing her to fall backwards. *Id.* The plaintiff filed a negligence claim against the utilities responsible for the guy wires, asserting the placement and condition of the guy wires were in violation of a national code. *Id.* The court affirmed summary judgment in favor of the utilities, recognizing that "a defendant has no duty to protect against an open and obvious hazard." *Id.* at 619. Specifically, the plaintiff knew the guy wires were there, and she had seen them and maneuvered around them for over a year before the accident. *Id.* at 620.

Similarly, in *Del Bianco*, *supra*, a plaintiff filed suit against an electric company after he tripped and fell over a guy wire supporting a utility pole. The plaintiff knew the pole and wire were there and testified, "I probably went in there thousands of times and never got hurt, but on this particular day, I went in and caught my leg." *Del Bianco*, 156 N.E.2d at 659. The court affirmed a directed verdict in favor of the utility, holding there was no duty to protect or warn the plaintiff regarding a hazard of which he was already aware. "Ordinarily

16

it may be assumed that a visitor on land will not violently come in contact with fixed objects which are known to him and the danger of which is obvious." *Id.* at 660.

In the case at hand, Antoin had even more experience with the guy wire at issue than the plaintiffs in *Jeansonne* and *Del Bianco*, considering that he had safely maneuvered around it for four years in his after-school ROTC drills. In addition, Antoin testified that he knew to be careful not to run into the guy wire since he typically "either ducked around them or underneath them or walked around them."

Here, the parking lot where Antoin attended ROTC drill practice from ninth through twelfth grades was not "an unfamiliar location" to him, and he had safely navigated the guy wire multiple times a week for years going to and from his practices. Further, there was no "particular dangerous condition" of which Antoin was unaware. Instead, the guy wire is analogous to the tree roots in *Hope Medical Park Hospital v. Varner*, 2019 Ark. App. 82, 568 S.W.3d 818, a straightforward hazard whose condition and risks were well known to Antoin.

Finally, the Carter/Harris family's reliance on an expert report by Dr. Jeremy Bauer fails to change the summary-judgment analysis. Dr. Bauer speculated as to why Antoin may have run into the guy wire despite his prior knowledge of it, including the possibility that the sun was in his eyes or that he was looking down at a curb instead of at the guy wire. While these factors may or may not explain why Antoin ran into the guy wire, they do nothing to eliminate the knowledge, experience, and familiarity Antoin had prior to this accident, which is the relevant inquiry regarding the open and notorious hazard. *See, e.g.*, *Varner*, *supra*; *Jeansonne*, *supra*; *Del Bianco*, *supra*.

Because the circuit court's grant of summary judgment in favor of Entergy should be affirmed on the basis of the open and notorious nature of the guy-wire hazard and Antoin's specific knowledge and experience under these particular circumstances, I dissent.

Klappenbach and Brown, JJ., join.

*Rainwater, Holt & Sexton, P.A.*, by: *Denise Reid Hoggard* and *Jeremy McNabb*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellants.

*Friday, Eldredge & Clark, LLP*, by: *James C. Baker, Jr.*, *Jamie Huffman Jones*, and *Kimberly D. Young*; and *Entergy Services, LLC*, by: *Wm. Webster Darling*, for appellees.