| ¡WALTER J. ROTHSCHILD, Judge.
The plaintiffs, Carol and Harold Vick-nair, filed suit against several defendants, alleging that they sustained damage to their home, located at 533 Elise Lane in River Ridge, as a result of construction work that took place on the street behind their home, Sauve Road. They assert that the work of the defendants, which was an emergency sewer repair, resulted in a cracked slab, cracked ceiling, and cracked walls in their home. Several defendants were dismissed prior to trial, including Brown, Cunningham, and Gannauch (“BC & G”), which was the engineering firm hired by Jefferson Parish. On August 11, 2003, the matter proceeded to trial against the remaining defendants, Boh Bros. Construction Company, L.L.C. (“Boh Bros”) and the Parish of Jefferson.
After presentation of the plaintiffs’ case, both defendants moved for judgments of involuntary dismissal. The trial court granted an involuntary dismissal in favor of Jefferson Parish, dismissing it from this lawsuit. However, the trial court denied Boh Brothers’ motion, and trial against this defendant continued and concluded on August 13, 2003. On August 14, 2003, the trial court rendered a judgment in favor of the plaintiffs and against Boh Bros, for | s$50,000.00. It is from this judgment that Boh Bros, appeals. For the reasons which follow, we reverse.

FACTS

In the summer of 1997, Jefferson Parish contracted with Boh Bros, to perform an emergency sewer repair on Sauve Road. At trial, Harold Vicknair testified that in June of 1997, construction began on Sauve Road behind his fence and yard. He stated that heavy machinery was used and this machinery was labeled with the name, “Boh Bros.” During the construction, he observed the workers pounding the sheet pilings in the ground close to his fence, and he contends that this activity made a great deal of noise and caused his entire house to shake. Mr. Vicknair indicated that the driving of the sheet piling occurred for about a week, and on one occasion, it caused a ceiling fan in the home to become dislodged and tilted.
Approximately two weeks after the installation of the sheet piling, Mr. Vicknair started noticing damage, including cracks in the ceiling of the kitchen area, which was an addition to the house. There was a small stress crack in the ceiling prior to this construction, but it was minor compared to the cracks after the construction. Mr. Vicknair also noticed that there were cracks in the flooring and walls, and the cabinets and bi-fold doors would not close. He stated that the home was in excellent condition when he and his wife purchased it in 1995, and it had no structural problems or damage prior to the construction work.
Mr. Vicknair testified that he contacted Boh Bros, about the damage approximately one month after the work was completed. Jeffrey Clement, who is a claims manager for Boh Bros., and Donald Abadie, who was a superintendent on the job, came out on behalf of Boh Bros, to view the damage and investigate the complaint. According to Mr. Vicknair, Mr. Clement said that Boh Bros, would take care of the problem, but they did not.
|4CaroI Vicknair testified that she and her husband bought the home on Elise Lane in 1995 and it was in excellent condition, with no structural problems. In the summer of 1997, she was at home babysit *517 ting several children when the road construction began behind her home. She witnessed “huge machines” driving sheet piling into the ground, and this equipment was labeled with “Boh Bros.” She stated that this “pile driving” affected her home. She noticed white powder from the ceiling on the floor and a ceiling fan became dislodged during this activity. During the driving of the sheet piling, the chandeliers and the china in her cabinet would shake. She complained to the workers about the pounding of the piling with a backhoe, because it scared the children.
Mrs. Vicknair testified that there was no apparent damage to her home prior to the construction, but approximately 3 weeks to a month after the work, she noticed cracks in the ceiling, walls, and floors. She admitted that there was a stress crack in the ceiling of the kitchen area prior to the construction, but she stated that it was a very minor hairline crack and not an “opening” prior to the construction.
Brett Todd testified that he was the Director of the Sewerage Department for Jefferson Parish at the time of this job. After being notified of possible sewerage problems on Sauve Road, he went to the site and saw that the road had collapsed in one area. On behalf of Jefferson Parish, he hired Boh Bros, to do the construction necessary to fix the problem and BC & G to inspect the job. There were no written plans or specifications for this job, because it was an emergency repair. He stated that it was Boh Bros.’ responsibility as the contractor to determine the means and methods of construction for this job.
Donald Abadie, who is a representative of Boh Bros, and a superintendent on this job, testified that BC & G told them how to install the sheeting, what machines to use, and how far to dig, because they were in charge of the job. Boh Bros, relied on BC & G to make sure that the work would not cause any damage. | sThere were no written plans, but Boh Bros, followed verbal instructions from BC & G. He stated that the steel sheeting was installed using a vibratory hammer, and the wood sheeting was driven using a backhoe. After the Vicknairs complained to Boh Bros., he went with Jeff Clement to their home and did not notice much damage, except a crack by the kitchen/dining area.
Richard Avent is a structural engineer who testified for the plaintiffs. He visited the Vicknair home in May 2002 and saw a large crack in the ceiling and some cracks in the slab. He noticed that the slab of the kitchen addition was settling downward and beginning to separate from the rest of the house. He stated that the location where the kitchen addition meets the house is a weak area, and if problems were to occur, they would occur at that location. He viewed photos from 1995 of the crack in the ceiling and stated that the crack was very minor at that time.
Based on Dr. Avent’s inspection of the premises and his discussion with Mrs. Vicknair in which she described the vibrations, he believes that the slab settled and moved a great deal. He believes that the Vicknairs would have noticed the cracks if they had been present prior to the construction. Dr. Avent stated that when sheeting is installed using a backhoe, the sheeting is hit with the backhoe when it reaches a hard spot in the ground, and this can shake a home. He opined that the cracks occurred fairly suddenly, and the probable cause of the cracking was the work done during the sewer repair, particularly the driving of the sheet piling. He testified that the cracks were not caused by settlement, because settlement is a slow process and these cracks opened over a short period of time. The appearance of large cracks over a short period of time *518 indicates that an outside disturbance was the likely cause of the cracks.
Charles Iglesias is a licensed architect who assembles pricing and costs for renovation work. After inspecting the premises and performing a level survey, Mr. | filglesias opined that the cracking damage was caused by a sudden change or violent act. He saw pictures of the 1995 crack and stated that it was a stress crack, but he related the current problems with the Vieknairs’ home, such as the cracked and shifted slab and the ceiling cracks, to the driving of the sheet pilings in 1997. He opined that it would cost approximately $80,000.00 to repair the damage to the home.
Dan Moliere, formerly an inspector for BC & G, was called to testify. He was assigned to the emergency sewer repair on Sauve Road. It was BC & G’s job to see that the work was being done properly and in accordance with general construction procedures. BC & G informed Boh Bros, of what was necessary to make the repairs and they complied with these instructions. However, BC & G did not tell Boh Bros, how to drive the sheet piling or how far to dig.
Mr. Moliere stated that the steel sheeting was started with a backhoe and then pushed and vibrated down. The wood sheeting was installed by putting a bucket on the backhoe and pushing down the sheeting, but he stated that they did not “beat” on the sheeting. When the wood pilings would hit a hard spot, they would “tap” on it with the backhoe. Boh Bros, employees operated the backhoe and pushed the sheeting into ,the ground.
Richard Dubus is an engineering inspector for Jefferson Parish. He inspects pipe laying and repairs for the Sewerage Department. He was at the site of the emergency sewer repair on Sauve Road every day from June 19, 1997 until July 3, 1997. He stated that the backhoe shoved some of the sheeting down, but there was no pounding when the sheeting was put in place. He testified that BC & G was the engineering firm on the project and they decided what needed to be done, but Boh Bros, was the contractor and they decided the means and methods for doing the job, including how to install the sheet piling and what equipment to use to drive it into the ground.
17Evan Conravey worked as a foreman for Boh Bros, on the Sauve Road sewer repair. BC & G told them what to do and they complied. He stated that the steel sheeting was set with a vibratory hammer and the wood sheeting was driven with a trackhoe. A backhoe was also used to drive the sheeting and the bucket of the machine would shove it into the ground. They sometimes had to tap on the sheeting with the bucket of the machine, but they did not pound it.
Jeffrey Clement is a claims manager for Boh Bros. He received a complaint from Mrs. Vieknair and went to her home to investigate. He saw a crack in the ceiling and took a picture of it. He did not tell the Vieknairs that Boh Bros, would take care of the damage, because the investigation was not completed.
Fred Vanderbrook, a mechanical engineer, was called to testify. He stated that he reviewed pictures and depositions, and he visually inspected the Vieknairs’ home and took elevation measurements. He stated that the kitchen was an addition to the home and was on an additional slab that was not tied to the original house. The major crack in question is at the intersection of the kitchen addition and the original house, which is the same place as the crack in the 1995 photographs. The elevation measurements showed that the main house was essentially level, but the *519 kitchen addition was tilted 1 lk inches downward to the right.
Mr. Vanderbrook stated that wood sheeting is normally pushed in with a baekhoe bucket, but any significant hammering would damage the wood. He opined that the energy from the vibration of the sheet piling, whether caused by the vibratory hammer or the baekhoe, would not create sufficient vibrations to damage the Vicknairs’ home. He believes that the cracks were caused by common ground settlement due to differences in the foundation type between the main house and the addition. He also believes that normal consolidation of the soil, along with shrinkage of the soil during periods of drought, led to the downward movement of the addition and caused cracks. He opined that the ongoing settlement of the | skitchen caused the crack that was present in 1995 to enlarge as the settlement continued.
Mr. Vanderbrook admitted that an addition with a different foundation than the main house could be more prone to damage from sheet driving or construction, but he does not believe that the work done by Boh Bros, could have caused the damage in this case.
Charles Hedges was accepted as an expert in civil engineering, specializing in geotechnical aspects of engineering and vibrations that may emanate from construction. He looked at the soil conditions in River Ridge and examined the Vick-nairs’ home. The focus of the visit was the crack in the ceiling of the kitchen area and he stated that the pictures showed this to be the same crack that was present in 1995. He stated that the bucket of a baekhoe is sometimes used to install sheeting, but this would not have damaged the Vicknairs’ property. He stated that the vibrations from passing cars would be equal or greater to the vibration created by Boh Bros, during construction, and the possibility of damage from either would be very small. If the damage to the house was caused by vibrations from the construction, he would expect damage to be present in different areas of the house and it would appear instantly, not over 3 weeks or a month. He stated that where the kitchen was added to the original house was the weakest point in the ceiling, and the original 1995 crack would become wider over time due to consolidation of the soil.

DISCUSSION

Mr. and Mrs. Vicknair testified that although there had been a small stress crack in their ceiling since 1995, the crack became much larger and other cracks appeared after the sewer repair work took place. The plaintiffs’ experts believed that the damage to the Vicknairs’ home was caused by the repair work of Boh RBros. However, the defendant’s experts opined that the damage was caused by settlement or consolidation of the soil.
The effect and weight to be given to expert testimony is within the broad discretion of the trial judge. Lanasa v. Harrison, et al., 02-26 (La.App. 4 Cir. 8/7/02), 828 So.2d 602, 605, writ denied, 02-2512 (La.11/27/02), 831 So.2d 286. Where the testimony conflicts, the factfin-der’s reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. Hammock ex rel. Thompson v. Louisiana State University Medical Center in Shreveport, et al., 34,086 (La.App. 2 Cir. 11/1/00), 772 So.2d 306, 312.
In its reasons for judgment, the trial court indicated that it believed the plaintiffs’ experts that the cause of the damage was the repair work performed by Boh Bros. Considering the record before us, we find that the trial court’s conclusion was *520 reasonable. However, even if Boh Bros.’ work caused the damage, Boh Bros, argues that it is not responsible for the damage to the Vicknairs’ home, because it was not negligent or strictly liable. We agree.
In the plaintiffs’ petition, they argue that the defendants, including Boh Bros., were negligent by improperly driving pilings, failing to exercise reasonable care, failing to safeguard the plaintiffs’ home, and by engaging in construction and other activity that caused damage to the plaintiffs’ home and property. However, the testimony at trial reveals that Boh Bros, was not negligent.
Dan Moliere is a former inspector for BC & G, and he was assigned to the emergency sewer repair on Sauve Road in 1997. He testified that BC & G determined what work had to be done on the project and told Boh Bros, what they had to do. He stated that Boh Bros, complied with the instructions from BC & G. He further stated that the method used by Boh Bros, to install the sheeting was the standard method used in the industry. He indicated that Boh Bros.’ work was done in accordance with standard construction techniques, and BC & G would have Imstopped the work if they believed that it could have caused any damage to nearby property. He stated that there was no time for vibration studies because it was an emergency job, but he did not believe that such studies were necessary. To his knowledge, there was nothing in this job that created a hazard to anyone or any property damage, and he was not aware of any complaints during the job. He believes that the work was properly done by Boh Bros.
Brett Todd was the Director of the Sewerage Department for Jefferson Parish at the time of this job. He was notified of a sewerage problem on Sauve Road and, when he arrived at the site, he found that the road had collapsed. In order to protect the public, he ordered an emergency repair of the road and hired Boh Bros, to fix the problem. BC & G, an engineering firm, was hired to inspect the job and an engineering inspector was at the site while the repair took place.
Mr. Todd testified that Jefferson Parish had a working relationship with Boh Bros, for years, and Boh Bros, had previously performed this type of work without complaints. He stated that the engineering inspector would shut down the job if he believed it was a detriment to the public. He testified that Jefferson Parish had no reason to believe that the work would cause damage to the property and he knew of no reason for Boh Bros, to believe that their work was hazardous.
Richard Dubus, an engineering inspector for Jefferson Parish, was at the work site every day. He testified that nothing different was done in this sewer repair than any other sewer repair. The work performed by Boh Bros, was in accordance with standard construction techniques. He stated that there were no complaints about Boh Bros.’ work during the job, and there was no reason to believe that the work would create a hazard or cause damage to property. He did not think that vibration monitoring or soil boring was necessary.
Evan Conravey worked as a foreman for Boh Bros, on this project. He testified that they complied with the instructions of the engineers and used standard Inequipment to install the sheet pilings. He was at the site each day and was not aware of any complaints about Boh Bros.’ work. He testified that there was no reason to believe that the work was hazardous or could cause damage to nearby property.
*521 Fred Vanderbrook, a mechanical engineer, testified that this was a simple repair job and he did not believe that Boh Bros, had any reason to believe that their work would cause damage to property. Charles Hedges, a civil engineer, also testified that he was not aware of any reason for Boh Bros, to believe that their work would cause damage to property.
Donald Abadie also testified on behalf of Boh Bros, with regard to this issue. However, the trial court did not believe that he was a credible witness, so we will not consider his testimony on this issue.
In order to prevail in a negligence action, the plaintiff has the burden of proving by a preponderance of the evidence both negligence of the defendant and that the damage was caused by the defendant’s fault. State Farm Mutual Automobile Insurance Co., et al. v. McCadney, 01-900 (La.App. 5 Cir. 12/26/01), 806 So.2d 776, 778-779. Although the trial court found that the damage to the Vicknairs’ home was caused by Boh Bros.’ work, the testimony produced by the plaintiffs did not establish that Boh Bros, was negligent in its performance of the work on this project. To the contrary, the testimony was clear that Boh Bros, complied with the instructions of the engineers and standard construction practices and techniques. Although there were no written plans in this case, the testimony revealed that the engineers, BC & G, gave Boh Bros, verbal instructions regarding what needed to be done, and Boh Bros, followed these instructions. The testimony also indicated that there was no reason to believe that the work performed by Boh Bros., in accordance with the instructions from BC & G, could cause damage to property or create a hazard. Considering the testimony, evidence, and pertinent hiJaw, we find that the plaintiffs did not establish that Boh Bros, was negligent in performing their work on the emergency sewer repair.
The plaintiffs argue that negligence is not required in order to find Boh Bros, liable, because they contend that the work performed by Boh Bros, is considered “pile-driving” per Lombard v. Sewerage and Water Board of New Orleans, et al., 284 So.2d 905 (La.1973), and pile-driving is ultrahazardous activity for which strict liability applies. However, a review of the Lombard case reveals that the work performed in that case is distinguishable from the work in this case. In Lombard, although sheet pilings were driven and some of the equipment was the same as in this case, additional work was performed that would constitute pile-driving. In addition to the sheet piling, the construction workers in Lombard used a steam hammer mounted on a skid and rollers to drive round, wooden, supporting pilings into the ground, and the court stated that they were “driven to the desired depth below the surface with a punch.” This type of work was not performed in the case before this court. Furthermore, several witnesses, including the plaintiffs’ own expert, Richard Avent, testified that there was no “pile-driving” performed in this case. Therefore, we find that the ultrahazardous activity of pile-driving did not occur in the present case.
We must now consider whether the work in this case constitutes ultrahaz-ardous activity, even though it is not pile-driving. In order for an activity to be considered “ultrahazardous,” it must be capable of causing injury to others despite the exercise of due care. Burton v. Conoco Offshore, Inc., et al., 93-599 (La.App. 5 Cir. 2/9/94), 631 So.2d 1374, 1377. However, if an activity can be conducted without a high degree of risk of injury by exercising due care, then it is not ultrahazardous. Davis v. Insurance Company of North *522 America, et al., 94-698 (La.App. 1 Cir. 3/3/95), 652 So.2d 531, 537, unit denied, 95-0840 (La.5/5/95), 654 So.2d 334.
113The testimony at trial reveals that the work performed by Boh Bros, did not create a high risk of injury. There was no evidence of damage to other homes in the area and the testimony of several witnesses indicated that there was no reason to believe that the work would cause damage to property. Accordingly, we find that the work performed by Boh Bros, in this case was not ultrahazardous, and Boh Bros, is not strictly liable for the damage to the Vicknairs’ home.
We do not disagree with the trial court that the emergency sewer repair caused the unfortunate damage to the plaintiffs’ home. However, we cannot hold Boh Bros, liable where the evidence does not establish that Boh Bros, was negligent, and the activity was not ultrahazardous. Accordingly, we are compelled to reverse the trial court’s judgment in favor of the plaintiffs and against Boh Bros.
Considering our finding that Boh Bros, is not liable for the damage to the plaintiffs’ property, it is unnecessary for us to address the remaining assignments of error asserted by Boh Bros. Further, we note that Jefferson Parish was the owner and “proprietor” of the property where the work occurred, and the owner of property may be held strictly liable, pursuant to LSA-C.C. art. 667, under certain circumstances. However, Jefferson Parish was dismissed from this lawsuit and this ruling was not appealed by either party. Therefore, we cannot review whether Jefferson Parish would have been held liable in this case.

DECREE

For the reasons set forth above, we find that Boh Bros, is not liable for the damage in this case, and we reverse the judgment of the trial court.

REVERSED.