STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-654

TIM DRONETTE, ET AL.

VERSUS

SHELTER INS. CO., ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-1983
HONORABLE R. RICHARD BRYANT, JR., DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Oswald A. Decuir, Judges.

AFFIRMED.

Christopher P. Ieyoub
Plauche, Smith & Nieset
1123 Pithon Street
Lake Charles, LA 70601
Telephone: (337) 436-0522
COUNSEL FOR:
    Defendants/Appellees - Shelter Ins. Co., Bruce Bordlee, and Mary
    Bordlee

Gregory P. Marceaux
Marceaux Law Firm, L.L.C.
2901 Hodges Street
Lake Charles, LA 70601
Telephone: (337) 310-2233
COUNSEL FOR:
    Plaintiffs/Appellants - Tim Dronette and Kammie Dronette

**THIBODEAUX, Chief Judge.**

Plaintiffs-appellants, Tim Dronette, Kammie Dronette, individually, and on behalf of their minor child, Chris Dronette, assert that the trial court erred by granting a summary judgment in favor of Bruce Bordlee, Mary Bordlee, and their home insurer, Shelter Mutual Insurance Company. The trial court found that the Bordlees had no knowledge of the defect in their home's balcony railing that may have caused Chris to fall off the balcony and sustain serious injuries. For the following reasons, we affirm.

I.

## ISSUES

We shall consider (1) whether the Dronettes submitted enough evidence to create a genuine issue of material fact with respect to the Bordlees' knowledge of the defect in their home's balcony railing that may have caused Chris's fall, and (2) whether the doctrine of res ipsa loquitur applies to this case.

II.

## FACTS

On June 13, 2005, Tim Dronette and Chris Dronette were removing carpet from an upstairs room of the Bordlees' two story house. They were doing so by gathering pieces of carpet into a bundle and throwing it over the second floor balcony's railing. Each bundle of the old carpet weighed about thirty five pounds. At the time of the accident, Chris weighed about two hundred and fifty pounds.

On his third or fourth carpet-disposing trip to the balcony, Chris made contact with the railing. The railing gave way; Chris lost his balance and fell to the ground, sustaining serious injuries.

About three days prior to the accident, Mary Bordlee asked Brian Trouth, a building contractor, to inspect the balcony. According to Mary Bordlee's deposition, she asked for the inspection because she was concerned about one of the balcony railing's rattling spindles, and because she wanted advice on how to paint the railing's nail heads properly.

Troth testified that it took him fifteen to thirty minutes to complete the inspection. Troth examined the rattling spindle and the nails. Troth stated that he normally checked wood for decay by poking the wood with a knife, but he did not recall doing so this time. Nonetheless, during his inspection, he grabbed and shook the railing, concluding that there was nothing unsafe about the balcony's condition.

Tim Dronette admitted that he walked onto the balcony before removing the carpet to examine whether it was safe to throw the carpet over the railing. That inspection did not reveal anything out of the ordinary.

Photographs taken after the accident and submitted to this court reveal that there was a large rotten spot in the support column of the railing that collapsed. Troth testified that, after the accident, he in fact saw decay on the railing, and that he replaced the column that contained the rotten spot.

After a hearing, the trial court granted the Bordlees' summary judgment motion, concluding that there was no way for the Bordlees to know of the defect in the railing prior to the accident.

III.

## STANDARD OF REVIEW

Appellate court reviews summary judgment de novo. *Guilbeaux v. Times of Acadiana, Inc.*, 96-360 (La.App. 3 Cir. 3/26/97), 693 So.2d 1183.

IV.

## LAW AND DISCUSSION

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Although the initial burden of proof remains with the movant, if the movant will not bear the burden of proof at trial, the movant need not negate all essential elements of the adverse party's claim, action, or defense. La.Code Civ.P. art. 966(C)(2). Instead, the movant must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id.* Then, the adverse party must produce enough factual support to establish that he will be able to satisfy his evidentiary burden of proof at trial. *Id.* There is no genuine issue of material fact if the adverse party fails to produce the factual support. *Id.*

**Knowledge of the Defect**

"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction." La.Civ.Code art. 2322.[1] Yet, the liability attaches only if the injured party can show that the owner had actual or constructive knowledge of the defect that caused the injury. *Id.*

The Dronettes argue that our law places a duty on the property owners to discover unreasonably dangerous conditions on their properties. Because it takes

---

[1] In their brief, the Dronettes cite La.Civ.Code art. 2317—applicable to immovable property—as the basis for liability. Although the same principles apply under both articles, we believe that La.Civ.Code art. 2322—applicable to buildings—is more appropriate in this case.

considerable time for decay to develop, the Dronettes assert that the Bordlees should have known there was rotten wood in their balcony railings.

Constructive notice means "the existence of facts which infer actual knowledge." La.R.S. 9:2800(D). There is constructive knowledge if a condition that caused the injury existed for such a length of time, that the responsible party must have discovered it in the exercise of ordinary care and diligence. *Joseph v. City of New Orleans*, 02-1996 (La.App. 4 Cir. 3/5/03), 842 So.2d 420. Thus, the owner cannot ignore the condition of the owner's property and then claim release from liability because of this self-imposed ignorance or lack of diligence.

Yet, the homeowners here had no notice, actual or constructive, of the alleged defect. None of the persons involved in this suit have observed any rotten spots prior to the accident. The Bordlees certainly did not ignore the condition of their property. Mary Bordlee requested an inspection of the railing from a professional building contractor. Troth, in turn, examined the state of the railing by grabbing and forcefully shaking it.

Tim Dronette, a carpeting contractor, examined the balcony for safety, finding nothing dangerous. Thus, both contractors concluded that the balcony was in good and safe condition. It is very difficult for us to imagine what else these *homeowners* could have reasonably done to discover the rotten wood.

This court may have been more receptive to the Dronettes' argument if Mary Bordlee had not requested the inspection. As it stands, the Dronettes have not carried their summary judgment evidentiary burden on the element of knowledge.

**Application of Res Ipsa Loquitur**

We find that the doctrine of res ipsa loquitur does not apply to this case. To use the doctrine, a plaintiff must meet three criteria: (1) submit enough evidence

4

to show that the injury is of the kind that does not occur in the absence of negligence, (2) demonstrate that the defendant's negligence is the probable cause of the accident and eliminate other equally probable causes of injury, such as plaintiff's conduct, and (3) show that the defendant's negligence is within the scope of his duty to the plaintiff. *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 06-3030 (La. 9/5/07), 966 So.2d 36, *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So.2d 654 (La.1989).

The Dronettes failed to satisfy the second criterion, i.e., to demonstrate that the Bordlees' negligence was the probable cause of the accident and to eliminate other equally probable causes. From the evidence submitted at this juncture of the proceedings, it is equally probable that Chris caused the accident and his resulting injuries. When the railing gave way, the weight of his person and his load totaled nearly three hundred pounds. It is certainly probable that the railing collapsed not because of the rotten wood, but because of the pressure from the sudden contact with all this weight. Therefore, the doctrine of res ipsa loquitur does not apply to this case.

V.

**CONCLUSION**

Summary judgment in favor of Mary and Bruce Bordlee, as well as Shelter Mutual Insurance Company, is affirmed. Costs of this appeal are assessed to Tim Dronette and Kammie Dronette.

**AFFIRMED**.