FREDERICKA HOMBERG WICKER, Judge.
 

 |?This is a personal injury matter. Plaintiffyappellant Jeffrey Meaux contends that the trial court erred in granting summary judgment in favor of defendant/ap-pellee Wendy’s International, Inc. (‘Wendy’s”). Mr. Meaux was a worker hired by a subcontractor to clean up debris on a project in which the subcontractor was removing fascia from a Wendy’s restaurant. Mr. Meaux was injured when a part of the building’s front wall collapsed on him while other employees were removing the fascia from the building. Mr. Meaux sued Wendy’s, alleging both negligence and strict liability. Mr. Meaux specifies five errors to the proceedings below, in all of which he contends for various reasons that the trial court erred in granting Wendy’s motion for summary judgment. For the reasons that follow, we reverse the trial court’s judgment and remand for further proceedings.
 

 
 *781
 
 FACTS AND PROCEDURAL HISTORY
 

 The story of this case begins on August 29, 2005, when Hurricane Katrina made landfall over southeastern Louisiana. Katrina caused major damage to the Rroof of a fast food restaurant located at 7021 Westbank Expressway in Marrero, Louisiana. The parties agree that the restaurant was constructed in the early 1980’s.
 

 Wendy’s, the owner of the restaurant, hired F.J.B. Construction, Inc. (“F.J.B.”) to perform a “fascia retrofit” to repair the damage to the fascia. The fascia of a building is the horizontal or slanted portion of a building’s roof that hangs over or across the top of the building’s wall. In this case, the fascia in essence acted as a visor sitting around the building’s head. The building’s head was topped off by its roof. The fascia retrofit, which was largely aesthetic in nature, required F.J.B. to tear the wooden fascia away from the remainder of. the roof and to replace the wood. F.J.B. and Wendy’s entered into a work agreement on November 29, 2005.
 

 Mark Ross, F.J.B.’s director of operations and executive vice president, indicated during a deposition that after he entered into the work agreement with Wendy’s, he entered into a subcontract with JAFC/Jimmy Alsobrooks (“JAFC”) to repair the roof and to pick up debris around the Wendy’s restaurant.
 
 [1]
 
 This work required that a supervisor, a carpenter, and two laborers disconnect and cut the damaged wood from the roof and dispose of the wood. No written evidence of this contract appears in the appellate record. Mr. Ross further testified that prior to beginning the repairs, he inspected the exterior of the- Wendy’s building with John Danz, F.J.B.’s job superintendent at the Wendy’s site. Messrs. Danz and Ross determined that JAFC would open the fascia and determine how best to dispose of and repair the fascia. According to Mr. Ross, no Wendy’s employees were involved in the pre-job planning process, nor did any Wendy’s employees exercise any control over the fascia work.
 

 14JAFC employees began repairing the fascia of the Wendy’s restaurant in the afternoon of November 29, 2005. Shortly after removing a portion of the fascia covering the north wall of the Wendy’s restaurant, the top portion of the roof and the overhanging fascia collapsed and fell on Mr. Meaux. Mr. Meaux was permanently paralyzed as a result.
 

 Mr. Meaux filed a petition for damages on November 28, 2006 alleging that (1) Wendy’s contracted to build the north wall with an improper design and allowed “improper construction procedures” to occur during the construction of the north wall, (2) Wendy’s had ownership and/or “garde” of a dangerous and defective building and failed to warn JAFC, and that (3) Wendy’s committed “other acts of negligence [that] will be more fully set forth at the trial.” Wendy’s, F.J.B., ACE American Insurance Company and XYZ Insurance Company were named as defendants. ACE and XYZ were alleged to be the general liability insurance providers for Wendy’s and F.J.B. respectively. The Louisiana Workers’ Compensation Corporation subsequently intervened seeking to recoup compensation benefits and medical expenses paid to Mr. Meaux as a result of his injury. On March 8, 2007, F.J.B. filed an exception of no cause of action. Eventually the trial court granted this exception and dismissed F.J.B. from this matter with prejudice. That decision is final.
 

 Wendy’s thereafter filed the motion for summary judgment at issue here contend
 
 *782
 
 ing that none of its employees were present or active in the events leading up to Mr. Meaux’s accident; therefore, it could not be liable for Mr. Meaux’s injuries. Wendy’s also contended that it did not know, nor should it have known, of any defects in the wall. In support of its motion, Wendy’s relied upon Mark Ross’s deposition testimony in which he insisted that there were no Wendy’s employees on the property at the time of Mr. Meaux’s injury. Wendy’s also relied |5on Mark Ross’s deposition testimony indicating that Wendy’s was not responsible for the 2005 plans for removing the fascia.
 

 In his memorandum opposing the motion, Mr. Meaux asserted that Wendy’s was liable for his injuries under a general negligence theory because Wendy’s failed to inspect the restaurant prior to accepting it for occupancy when it originally built the building in the 1980’s, had failed to maintain the restaurant properly, and in 2005 had contracted work that was inherently dangerous. Mr. Meaux also asserted that Wendy’s is strictly liable under La.C.C. art. 2317.1 and art. 2322 for his injuries because Wendy’s maintained custody over a building with an inherent vice or defect.
 

 The trial court granted Wendy’s motion for summary judgment and dismissed Mr. Meaux’s claims with prejudice. In his reasons for judgment, the trial judge concluded that “there is no basis for a finding of fault against Wendy’s as it was completely uninvolved in the construction project and did not appear at the worksite. In addition to inspecting and planning the demolition project and debris removal, FJB and its subcontractors further provided all materials and labor.”
 

 The trial court additionally determined that the alleged defects in the north wall of the restaurant were not a vice that Wendy’s knew or should have known about. The court stated in its reasons for judgment that Mr. Meaux’s allegation that Wendy’s was “liable for the ruin as the original construction plans were not followed and that the missing bolts would easily have been visible to Wendy’s before the installation of the drop ceiling ... further supports the argument that ... F.J.B. should have seen it on their pre-demolition inspection.”
 

 Finally, the trial court concluded “a repairman hired to perform the work of his employer cannot recover from the owner for injuries received while working in 16the area under repair.” The trial court cited
 
 Desormeaux v. Audubon Ins. Co.,
 
 611 So.2d 818 (La.App. 3 Cir.1992),
 
 writ not considered,
 
 613 So.2d 966 (La.1993),
 
 writ denied,
 
 613 So.2d 1002 (La.1993) in support of this final conclusion.
 

 This appeal followed.
 

 STANDARD OF REVIEW
 

 A motion for summary judgment is properly granted only on a showing that there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B);
 
 Tassin v. City of Westwego,
 
 95-307 (La.App. 5 Cir. 12/13/95) 665 So.2d 1272. The initial burden of proof is with the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. The non-moving party must then produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La.C.C.P. art. 966(C)(2);
 
 Callis v. Jefferson Parish Hosp. Service, Dist. # 1,
 
 07-580, pp. 4-5 (La.App. 5 Cir. 12/27/07), 975 So.2d 641, 643.
 

 
 *783
 
 The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and is favored in the law. La.C.C.P. art. 966(A)(2);
 
 Robinson v. Jefferson Parish School Bd.,
 
 08-1224, p. 13 (La.App. 5 Cir. 4/7/09), 9 So.3d 1035, 1043,
 
 writ denied,
 
 09-1187 (La.9/18/09), 17 So.3d 975. Even though the summary judgment procedure is favored, it is not a substitute for trial on the merits.
 
 S.J. v. Lafayette Parish School Bd.,
 
 06-2862, p. 5 (La.6/29/07), 959 So.2d 884, 887 (per curiam).
 

 |7A material fact is one that potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit.
 
 Hines v. Garrett,
 
 04-806, p. 1 (La.6/25/04), 876 So.2d 764, 765 (per curiam). A genuine issue is a “triable issue.”
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. If reasonable persons could disagree after considering the evidence, a genuine issue exists. However, if reasonable persons could reach only one conclusion on the state of the evidence, there is no need for a trial on that issue and summary judgment is appropriate.
 
 Id.; Alwell v. Meadowcrest Hosp., Inc.,
 
 07-376, p. 4 (La.App. 5 Cir. 10/30/07), 971 So.2d 411, 414. “In determining whether an issue is ‘genuine,’ courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.”
 
 Smith,
 
 93-2512 at 27; 639 So.2d at 751.
 

 Appellate courts review the granting or denial of a motion for summary judgment
 
 de novo
 
 under the same criteria governing the district court’s consideration of whether summary judgment is appropriate. Specifically, appellate courts must ask the same questions as the district court: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.
 
 Matthews v. Banner,
 
 08-339 (La.App. 5 Cir. 10/28/08), 996 So.2d 1161, 1163.
 

 SPECIFICATIONS OF ERROR
 

 Mr. Meaux has specified five errors to the proceedings below and has listed twelve “issues presented for review” in his brief.
 
 [2]
 
 In all five errors and all twelve “issues presented” he contends that the trial court erred, for various reasons, in | granting summary judgment in favor of Wendy’s. We will consider the specifications of error together. Mr. Meaux’s claims fall under either a theory of negligence pursuant to La.C.C. art. 2315 or strict liability pursuant to La.C.C. art. 2317.1 and La.C.C. art. 2322.
 

 Negligence
 
 — La.C.C.
 
 art. 2315
 

 Mr. Meaux contends that summary judgment is inappropriate at this stage in the proceedings because he will be able to prove Wendy’s liability under the general negligence provisions of La.C.C. art. 2315 at trial. Mr. Meaux argues that Wendy’s had a duty pursuant to La.C.C. art. 2315 to “inspect the building during construction and prior to accepting it for occupancy” when the building was constructed in the 1980’s. Mr. Meaux further argues that the Wendy’s building had a “structural defect” that was “readily apparent during construction and at all times after the steel
 
 *784
 
 and walls were constructed and until the installation of the ceiling.” In a separate assignment of error, Mr. Meaux contends that Wendy’s is liable under La.C.C. art. 2315 because it contracted work that was intrinsically and inherently dangerous. We will consider the arguments relative to Mr. Meaux’s negligence claims together.
 

 Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315. In Louisiana, liability for negligence is determined by the duty-risk analysis. To establish liability for damages in a negligence case, the plaintiff is required to prove the following: (1) that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) that the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) that the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) that the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the 18scope of liability or scope of protection element); (5) proof of actual damages.
 
 Detraz v. Lee,
 
 2005-1263 (La.1/17/07), 950 So.2d 557, 565.
 

 The question here is: does this plaintiff owe a duty to this defendant or, put differently, was this plaintiff within the scope of protection afforded by law to this defendant? Generally neither the building owner nor the general contractor are liable for the negligence of an independent contractor who performed work for them unless the building owner or the general contractor controlled the work or the work was intrinsically and inherently dangerous.
 
 Villaronga v. Gelpi Partnership Number 3,
 
 536 So.2d 1307, 1310-11 (La.App. 5 Cir.1988). In deciding whether the person performing the work is an employee or an independent contractor the focus of inquiry is directed at gauging the degree of independence or subserviency of the person in accordance with the following factors: (1) the existence of a contract for the performance of a specific job, (2) payment of a fixed price for the work, (3) employment by the contractor of assistants who are under his control, and (4) the furnishing of tools and materials and the right to control the conduct of the work while in progress.
 
 Id.
 
 at 1311.
 

 During his deposition, Mark Ross testified that he entered into an agreement with JAFC for a specific task: to tear away and replace a portion of the roof of the Wendy’s restaurant according to JAFC’s chosen methods. According to Mr. Ross, JAFC provided its own employees and was responsible for the conduct of the work. There is nothing in the record contradicting this evidence. Accordingly, there is no genuine issue of material fact that JAFC was an independent contractor with full operational control of the job.
 

 In
 
 Villaronga, supra,
 
 this court discussed the nature of building owner control of work necessary to cause the injured contractor to come within the scope of protection. In that case, a fire substantially damaged a four-building apartment 110complex in Kenner. The plaintiffs were tenants of the apartment complex who brought suit to recover for losses sustained in the fire.
 
 Id.
 
 at 1309. The defendants were the owner of the building and a general contractor hired to repair the building. The plaintiffs contended that the fire was started by a subcontractor hired by the general contractor to solder the plumbing pipes and fittings. The plaintiffs further contended that the fire started when the plumbers charred wood, wood shavings and soundboard while soldering water pipes in one of the buildings under construction, and that the combustible materials subsequently flared up, ignited the
 
 *785
 
 building, and spread to the adjoining buildings.
 
 Id.
 
 at 1309-10.
 

 According to the plaintiffs, the defendant building owner breached its duty to inspect the premises for dangerous conditions and to take corrective measures to avoid injury.
 
 Id.
 
 at 1310. At the conclusion of the plaintiffs case-in-chief, the trial court granted a motion for a directed verdict in favor of the defendant building owner.
 

 This Court affirmed. In doing so, we enunciated the following rule:
 

 As a general rule neither the owner nor the general contractor are liable for the negligence of an independent contractor who performed work for them unless, as urged by the plaintiffs here: (1) the work undertaken by the independent contractor is inherently or intrinsically dangerous, or (2) the person for whom the work is performed gives express or implied authorization to an unsafe practice or has the right to or exercises operational control over the method and means of performing the work.
 

 Id.
 
 at 1310-11 (citations omitted).
 

 We held that approving the architectural plans and having the right to inspect for compliance with the plans was not sufficient control to render the owner liable for the subcontractor’s negligence under La. C.C. art. 2315.
 
 Id.
 
 at 1311.
 

 Similarly, in
 
 Dauzat v. Thompson Const. Co., Inc.,
 
 02-989 (La.App. 5 Cir. 1/28/03), 839 So.2d 319, the plaintiff was employed as a laborer for a sprinkler Ininstallation company hired by a general contractor to build a shopping center on previously vacant land. He was working on an electrical lift attempting to guide an eight inch pipe into its connection.
 
 Id.
 
 at 321. While another sprinkler installation company controlled the lift, the lift’s front left tire went into a hole in the concrete slab, causing the lift to lurch and the plaintiff to fall from the lift to the ground some twenty feet below.
 
 Id.
 
 The plaintiff filed suit against the landowner and the general contractor. The trial court granted a motion for summary judgment filed by the landowner.
 

 This Court affirmed. We noted that in
 
 Villaronga,
 
 we found that a landowner could be liable for a subcontractor’s negligence if it exercised operational control over the method and means of performing the construction, and/or gave express or implied authorization to an unsafe practice.
 
 Id.
 
 The
 
 Dauzat
 
 plaintiff contended “that [the landowner] approved the architectural plans that provided for the hole in the floor as part of the construction” and that it therefore exercised operational control over the project. We rejected that argument, concluding that “[tjhere was no showing that [the landowner] had any control over the construction operations and the contrary was established by affidavit. Approving the plans and inspecting for compliance with the specifications does not establish such control that would result in its liability.”
 
 Id.
 
 at 322.
 

 The
 
 Villaronga
 
 proposition has been reaffirmed by this Court on several occasions since
 
 Dauzat. See, e.g., Arroyo v. East Jefferson General Hosp.,
 
 06-799 (La.App. 5 Cir. 3/13/07), 956 So.2d 661, 664;
 
 Sims v. Cefolia,
 
 04-343 (La.App. 5 Cir. 11/30/04), 890 So.2d 626, 631.
 

 Thus, in keeping with
 
 Dauzat
 
 and
 
 Villaronga,
 
 we find that Wendy’s cannot be liable to Mr. Meaux under La.C.C. art. 2315 unless the work undertaken by Mr. Meaux was inherently or intrinsically dangerous, or Wendy’s gave express or | ^implied authorization to an unsafe practice or had the right to exercise operation
 
 *786
 
 al control over the method and means of performing the work.
 
 [3]
 

 In this case, the evidence establishes that Wendy’s did not exercise control over JAFC’s and Mr. Meaux’s means of performing the work on its restaurant. The evidence also establishes that Wendy’s did not give express or implied permission to perform an unsafe practice.
 

 Mr. Meaux argues that the first exception has been established because a hidden defect rendered the wall “inherently or intrinsically dangerous” to anyone performing work on the building. Wendy’s responds that “the construction activity was no more dangerous than any standard construction project” and that it was JAFC’s negligence that caused the accident.
 

 “Ultrahazardous” or “inherently dangerous” activities are those that can cause injury to others even when conducted with the greatest prudence and care.
 
 Vicknair v. Boh Bros. Const. Co., L.L.C.,
 
 03-1351 (La.App. 5 Cir. 3/30/04), 871 So.2d 514, 521. The critical inquiry in determining whether activity is ultrahazardous or inherently dangerous is whether it can be made safe when it is performed in a proper and workmanlike manner.
 
 Buras v. Lirette,
 
 97-1255 (La.App. 4 Cir. 12/23/97), 704 So.2d 980, 983.
 

 To support his claim that the fascia retrofit was an inherently dangerous activity, Mr. Meaux introduced the affidavit of Dr. R. Richard Avent. Dr. Avent is a structural engineer and a former chairman of the Department of Civil and Environmental Engineering at Louisiana State University. In the affidavit, Dr. Avent opined that the roof and walls of the Wendy’s restaurant were designed to be held together by structural steel. Dr. Avent confirmed that the original 1980’s building plans for the restaurant required that the north wall be anchored to the | ^structural steel in six different locations. Dr. Avent opined that none of the bolts intended to anchor the north wall were present. Dr. Avent observed steel connector plates on the north wall that had empty holes that were clearly intended for bolts to connect the cinder block wall to the steel structure.
 

 Dr. Avent opined that the fact that the original failure to bolt the cinder block wall structural steel destroyed the wall’s structural integrity, rendering the wall unstable. Dr. Avent opined that, in the absence of bolts attached to structural steel, the overhanging wooden fascia of the roof had to remain intact to support the wall. Dr. Avent additionally opined that if the wall had been anchored to the structural steel, it would not have collapsed.
 

 Dr. Avent opined that during the construction of the building, the failure to anchor the front and back walls to the steel structure constituted an open and obvious defect. However, once the fascia was placed over the wall, the defect was hidden. Dr. Avent further opined that contractors could not have discovered that the north wall was not connected to the structural steel without removing the fascia. Dr. Avent concluded “the work performed involving the unsound wall was intrinsically and inherently dangerous. The fact that the weight of the cosmetic wooden structure would cause the masonry wall to collapse was not foreseeable to the contractor.”
 

 We find that the plaintiff, through Dr. Avent’s affidavit, has raised a material issue of fact as to whether the fascia retrofit was an inherently dangerous activity in the face of the hidden structural instability of
 
 *787
 
 the front wall. Dr. Avent opined that the alleged defect in the north wall was hidden, that the fascia retrofit required a contractor to remove the fascia, and that it was essential that the roof remain intact to support the wall because the wall had not been attached to structural steel. Thus, according to Dr. Avent, it was not possible to make the fascia retrofit safe lueven if the work was performed in a proper and workmanlike manner. Put differently, it was not possible for JAFC employees to remove the fascia without the north wall of the restaurant collapsing according to Dr. Avent. Additionally, Dr. Avent specifically opined that the fascia retrofit was “inherently and intrinsically dangerous.” Wendy’s presented the trial court with no evidence to rebut the claims in Dr. Avent’s affidavit.
 

 We therefore find that that the trial court improperly granted summary judgment as to Mr. Meaux’s general negligence claims.
 

 Strict Liability
 
 — La.C.C.
 
 art. 2317.1 and La.C.C. art. 2322
 

 Mr. Meaux also contends that there are genuine issues of material fact as to whether the alleged defects in the wall created an unreasonably dangerous condition or defect and that Wendy’s is therefore strictly liable under La. C.C. art. 2317.1, and 2322. Wendy’s contends that summary judgment was appropriate because there is no evidence in the record that it knew or should have known of the defect. The trial court agreed with Wendy’s. In its reasons for judgment, the trial court stated that the alleged defect was “obvious” and that it “should have been known to the contractors on inspection and not a defect that Wendy’s knew or should have known about.”
 

 Strict Liability Generally
 

 Mr. Meaux argues that the fact that the wall was not bolted to the structural steel was an unreasonably dangerous condition and that the building owner is liable to him because that dangerous condition injured him. He argues that this inherently dangerous condition was hidden, known, or knowable by the building owner but hidden from the contractor.
 

 La. C.C. arts. 2317 and 2317.1 define the basis for delictual liability for defective things. La. C.C. art. 2322 defines the basis for delictual liability for [ ^buildings. Prior to 1996, an owner’s liability for a vice or defect on the premises was rooted in La.C.C. arts. 2317 and 2322.
 
 See, e.g., Celestine v. Union Oil Co. of California,
 
 98-1868 (La.4/10/95), 652 So.2d 1299. Both La.C.C. art. 2317 and art. 2322 formerly imposed strict liability based upon status as owner or custodian rather than on personal fault.
 
 Id.
 
 at 1303. In 1996, the Louisiana legislature adopted La. C.C. art. 2317.1 and significantly amended La. C.C. art. 2322.
 

 La.C.C. art 2317.1 currently provides, in pertinent part:
 

 The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
 

 La.C.C. art. 2322 currently provides, in pertinent part:
 

 The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have
 
 *788
 
 known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
 

 Accordingly, a plaintiff alleging strict liability of a building owner or custodian must now prove the following elements: (1) that the defendant knew or should have known of the vice or defect; (2) that the damage could have been prevented by the exercise of reasonable care; and (3) that the defendant failed to exercise such reasonable care.
 
 Cochran v. Safeguard Self-Storage, Inc.,
 
 02-1272 (La.App. 5 Cir. 4/29/03), 845 So.2d 1128, 1130. If the plaintiff fails to prove any one of these elements, the claim fails.
 
 Dauzat v. Thompson Const. Co., Inc.,
 
 02-989 (La.App. 5 Cir. 1/28/03), 839 So.2d 319. In addition, for strict liability to attach to a building owner or custodian, the “vice” or “defect” must constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person | musing ordinary care under the circumstances.
 
 Monson v. Travelers Property & Cas. Ins. Co.,
 
 06-921 (La.App. 5 Cir. 4/24/07), 955 So.2d 758;
 
 Loescher v. Parr,
 
 324 So.2d 441, 446-447 (La.1975).
 

 Actual or Constructive Knowledge
 

 In its motion for summary judgment, Wendy’s contended that summary judgment is appropriate in this case because it did not know, nor could it have known, of the existence of the alleged defect in the restaurant wall. Mr. Meaux contends that Wendy’s knew or should have known about the alleged defect. We agree with Mr. Meaux.
 

 A plaintiff alleging strict liability must prove that the defendant had actual or constructive knowledge of the vice or defect. Constructive notice means “the existence of facts which infer actual knowledge.” La.R.S. 9:2800(D).
 
 [4]
 
 There is constructive knowledge if a condition that caused the injury existed for such a length of time that the responsible party must have discovered it in the exercise of ordinary care and diligence.
 
 Blount v. East Jefferson General Hosp.,
 
 04-407 (La.App. 5 Cir. 10/12/04), 887 So.2d 535, 538;
 
 Joseph v. City of New Orleans,
 
 02-1996 (La.App. 4 Cir. 3/5/03), 842 So.2d 420. The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant’s garde.
 
 Dufrene v. Gautreau Family, LLC,
 
 07-547 (La.App. 5 Cir. 2/22/08), 980 So.2d 68,
 
 writ denied,
 
 980 So.2d 694, 2008-0629 (La.5/9/08),
 
 writ denied,
 
 980 So.2d 698, 2008-0628 (La.5/9/08). One is presumed to have constructive notice of a defect or dangerous condition when it is shown to have existed for such a long period of time that knowledge thereof can be presumed, or that it can be said that one should have had knowledge of the condition.
 
 Charan v.
 

 Bowman,
 
 06-0882 (La.App. 1 Cir. 8/1/07), 965 So.2d 466,
 
 writ denied,
 
 07-1773 (La.11/9/07), 967 So.2d 505.
 

 Several Louisiana cases have addressed the issue of a custodian’s failure to discover vices or defects in things under their custody for a lengthy period of time. For example, in
 
 Moody v. Blanchard Place Apartments,
 
 34,587 (La.App. 2 Cir. 6/20/01), 793 So.2d 281, the plaintiff sustained injuries when he received an electric shock from the stove on which he was cooking due to a short circuit. The stove was approximately ten years old at the
 
 *789
 
 time of the plaintiffs injury.
 
 Id
 
 at 284. The onsite manager of the plaintiffs apartment building testified during a deposition that she inspected the stoves in the apartment building; however, she never inspected the actual wiring beneath the co-oktop where the short circuit occurred. The onsite manager did state, however, that repairmen occasionally made repairs to the stove.
 
 Id.
 
 The jury returned a verdict holding the defendants liable. On appeal, the Second Circuit took up the question of whether the jury was manifestly erroneous in finding that the defendants knew or should have known that the stove presented a risk of harm. The Second Circuit found no manifest error in the jury’s finding, noting that the property management company’s “policy of not requiring that (and almost making it cost prohibitive to have) qualified technicians maintain the electrical appliances on their premises is indicative that it knew or should have known that a dangerous condition was or could have been present in any of its appliances.”
 
 Id.
 
 at 294-95.
 

 In
 
 Johnson v. City of Winnfield,
 
 37,939 (La.App. 2 Cir. 12/10/03), 862 So.2d 433, the plaintiff was injured when he stepped on a manhole cover. As he stepped on the manhole cover, the manhole cover shifted, and the plaintiffs leg fell into the sewer line. Immediately after the accident, the store manager lifted the cover so the plaintiff could extricate his leg.
 
 Id.
 
 at 435. The manager described the cover as 11s“worn on the bottom from erosion,” with the “little lip around the bottom, that sits in the hole, that part was worn off.”
 
 Id.
 
 The manager noted at trial that he had worked at the grocery store for 23 years, and had never noticed anything wrong with this manhole cover. The city did not have a routine manhole inspection policy, however, a city maintenance worker testified that he would have inspected this particular manhole shortly before the accident, after a private contractor had worked on the main sewer line from that location. That same worker replaced the manhole cover after the plaintiffs accident, even though he testified that when he arrived, the cover looked “fine”; he tried walking across it, “and it didn’t pop up on [him].”
 
 Id.
 
 Three city maintenance workers (including the worker who replaced the manhole cover that caused the plaintiffs injury) testified they had never received any complaints regarding the manhole cover. The Second Circuit found no error in the trial court’s conclusion that the city had actual or constructive knowledge that the manhole cover was unstable.
 
 Id.
 
 at 437-38.
 

 In this case, after conducting a
 
 de novo
 
 review of the record, we find that there is a material issue of fact as to whether Wendy’s had constructive or actual notice of the alleged defects in the restaurant wall. Dr. Avent averred that the failure to bolt the wall to the structural steel was a defect that existed at the time of the construction of the restaurant and that Wendy’s should have noticed the defect at the time of construction. The architectural plans for the restaurant clearly indicate that the north wall was supposed to be bolted to the structural steel. Dr. Avent indicated that Wendy’s would have discovered the defect if it had exercised due care and had conducted proper inspections during the construction of the restaurant. Wendy’s did not introduce evidence contesting these findings. Moreover, the parties do not dispute that the restaurant has been in Wendy’s custody for approximately twenty years, and there is no indication in the record 119that Wendy’s ever inspected the wall or discovered the alleged defect.
 

 “Repairman Exemption
 
 ”
 

 Even assuming that the failure to bolt the masonry wall to the structural
 
 *790
 
 Steel was a dangerous condition, the trial court found in his reasons for judgment that in strict liability cases, “a repairman hired to perform the work of his employer cannot recover from the owner for injuries received while working in the area under repair.” The trial court cited
 
 Desormeaux v. Audubon Ins. Co.,
 
 611 So.2d 818 (La.App. 3 Cir.1992),
 
 writ not considered,
 
 613 So.2d 966 (La.1993),
 
 writ denied,
 
 613 So.2d 1002 (La.1993) in support of this assertion.
 

 The Louisiana Supreme Court has recognized that “there is no per se exception of repairmen from the ambit of an owner’s strict liability. Such exception only applies if a factual analysis results in a determination that the risk of injury or harm is unreasonable under the circumstances.”
 
 Celestine v. Union Oil Co. of Cal.,
 
 94-1868 (La.4/10/95), 652 So.2d 1299, 1304-05.
 

 In
 
 Celestine,
 
 the plaintiff (a welder) sued the owner of an offshore oil platform after he was injured by a falling railing that he had been hired to repair. After trial, the jury found the defendant was not negligent but that the condition of the defendant’s oil platform created an unreasonable risk of injury which was a cause of the plaintiffs accident and injury.
 
 Id.
 
 at 1302. The defendant filed a motion for judgment notwithstanding the verdict contending that it should not be held strictly liable where the plaintiff was performing repair work because it was not unreasonable to subject a repairman to the risks inherent in making repairs. The trial court denied the motion. The Third Circuit reversed the finding that the defendant was strictly liable and affirmed that the defendant and its employees were not negligent.
 
 Celestine v. Union Oil Co. of Cal.,
 
 93-1330 (La.App. 3 Cir. 5/4/94), 636 So.2d 1138. The Louisiana Supreme Court granted the plaintiffs writ | ^application to address this question: “Does Louisiana law recognize a ‘repairman’ exception to an owner’s strict liability for injury caused by a vice, defect or ruin on the premises?”
 
 Celestine,
 
 652 So.2d at 1303.
 

 The Supreme Court said no. The Supreme Court began its analysis by finding that in order to prevail under a strict liability theory of recovery, the plaintiff “must show that he was exposed to an unreasonable risk of harm from the condition of the handrail which he was hired to repair.”
 
 Id.
 
 at 1303 (emphasis in original).
 

 The court quoted the federal Fifth Circuit in
 
 Ladue v. Chevron, USA, Inc.,
 
 920 F.2d 272 (5th Cir.1991) for the proposition that the question of whether a risk is unreasonable is personal to the particular plaintiff:
 

 Whether a particular risk of harm is reasonable cannot be determined in a vacuum. The phrase “unreasonably dangerous,” in the words of Louisiana’s late distinguished Professor Wex S. Malone, “has no discernible content of its own and ... must acquire its meaning solely from the environment attendant on each of the variety of disputes in which it is put to use.” Unlike the regime of strict products liability, which uses the “ordinary consumer” as its benchmark, Louisiana’s scheme of strict liability under Articles 2317 and 2322 posits no constant person or persons, mythical or real, with respect to whom the reasonableness of a given risk is to be measured. For that reason, the Louisiana courts have found themselves under the rubric of assessing a risk “under all of the circumstances'of a particular case,” determining the reasonableness of a given risk “vis-a-vis the plaintiff,” or more accurately, vis-a-vis the plaintiff and those similarly situated.
 

 Id.
 
 at 1304 (footnotes and citations omitted).
 

 
 *791
 
 The Supreme Court further stated that the determination of whether a particular risk of harm is reasonable is a matter wed to the facts of the case.
 
 Id.
 
 The Supreme Court ultimately concluded:
 

 We do not adopt a “repairman” exception to strict liability under La.C.C. arts. 2317 and 2322. However, we do conclude that plaintiffs status as a repairman is a significant factor in determination of whether a risk is unreasonable.
 
 Id.
 
 at 1305.
 

 |21In
 
 Desormeaux,
 
 the plaintiff was a skilled general contractor and roofer. The plaintiffs father hired the plaintiff to repair a leak in the father’s roof.
 
 Id.
 
 at 819. While in his father’s attic, the plaintiff fell and injured his back.
 
 Id.
 
 at 820. He brought suit against his father’s liability insurer for severe injuries he received in the fall. The
 
 Desormeaux
 
 trial court found that the roof had fallen into “ruin” as a result of the neglect of the owners. In its reasons for judgment, the
 
 Desor-meaux
 
 trial court found that “[t]he evidence shows that the accident was caused by the water which was present on the ceiling joists. Whether the water came directly from the leaking roof or from the overflowing of the washtub is immaterial for the very presence of the water in either case was a result of the severely damaged roof.”
 
 Id.
 
 at 821.
 

 The Third Circuit reversed and rendered judgment in favor of the defendant.
 
 Id.
 
 at 821-22. However, the
 
 Desormeaux
 
 court did not hold that a “repairman” can never recover from a building owner for injuries received while working in the area under repair in strict liability cases. Rather, the court held:
 

 The facts of this case present a repairman making repairs in an area that presented an
 
 obvious
 
 risk of harm. The body of jurisprudence interpreting strict liability and/or negligence under these circumstances is well established. An owner is not liable for injury which results from a condition which should have been observed by the plaintiff in the exercise of reasonable care or which was obvious.
 

 Id.
 
 at 820-21 (emphasis in original) (citations omitted).
 

 Thus,
 
 Desormeaux
 
 is limited to those situations where a repairman attempts to make repairs in an area that presents an “obvious” risk of harm.
 

 The Louisiana courts of appeal have reaffirmed this holding on several occasions.
 
 See, e.g., Carter v. Exide Corp.,
 
 27,358 (La.App. 2 Cir. 9/29/95), 661 So.2d 698, 703.
 

 All things considered, under our
 
 de novo
 
 review of the trial court’s grant of 122summary judgment and the circumstances of this case, we And that a genuine issue of material fact still exists with respect to whether or not the defect in this case presented an unreasonable risk of harm.
 

 CONCLUSION AND DECREE
 

 Because there are genuine issues of material fact in this matter with respect to Mr. Meaux’s general negligence claims and strict liability claims, we find that the trial court improperly granted summary judgment in Wendy’s favor. The summary judgment rendered in favor of Wendy’s is reversed and the case is remanded for proceedings consistent with this opinion. All costs of this appeal are assessed to Wendy’s.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . At the time of Mr. Meaux’s accident, Mr. Ross was F.J.B.'s project manager.
 

 [2]
 

 . In his brief, Mr. Meaux contends that the trial court improperly engaged in fact finding and ruled upon disputed material facts, which is impermissible in the summary judgment context. He cites
 
 Maiorana v. Melancon Metal Bldgs., Inc.,
 
 05-933 (La.App. 5 Cir. 4/25/06), 927 So.2d 700 in support of this contention. However, in Maiorana, we held that the trial court “had to choose between the contradictory statements’’ of the subcontractor and the owner of a building.
 
 Id.
 
 at 705-06. The issue in that case was whether the building owner knew or should have known about defective skylights in the building.
 

 [3]
 

 . Accordingly, Mr. Meaux’s claim that Wendy's had a duty to "inspect the building during construction and prior to accepting it for occupancy” is inaccurate.
 

 [4]
 

 . This definition applies to public entities, but courts have applied it to strict liability claims under La.C.C. art. 2317 and La.C.C. art. 2322 against other entities as well.
 
 See, e.g., Dronette v. Shelter Ins. Co.,
 
 2008-654 (La.App. 3 Cir. 12/10/08), 998 So.2d 942.